HOT WAX, INC., Plaintiff–Appellant,

v.

TURTLE WAX, INC., Defendant–Appellee.

No. 98–3981.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1999.

Decided Sept. 15, 1999.

D. J. Sartorio (argued), Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Plaintiff–Appellant.

J. Patrick Herald (argued), Baker & McKenzie, Chicago, IL, for Defendant–Appellee.

Before COFFEY, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Hot Wax, Inc., brought this action against Turtle Wax, Inc., for false advertising and false promotion under § 43(a) of the Lanham Act seeking damages and injunctive relief. The district court granted Turtle Wax's motion for summary judgment after concluding that the doctrine of laches barred Hot Wax's pursuit of all requested relief. Because we agree with the district court's conclusion that the doctrine of laches applies in this case, we affirm.

## I. History

Hot Wax and Turtle Wax are competitors in the automated carwash/car wax industry. In the late 1960's and early 1970's, Edward Holbus began marketing Hot Wax products to carwashes nationwide. During that time, Holbus developed a self-described break-through product and a unique system of application that made it possible to apply genuine carnauba wax to the surface of automobiles in automatic carwashes. This system provides automobiles with both polish and protec-

tion. In 1975, Holbus incorporated Hot Wax, Inc., to sell Hot Wax products and the applicators for these products. Due to the physical characteristics of the wax and the manner in which the wax had to be applied, Hot Wax encountered high costs in integrating its wax into its line of carwash products. Hot Wax began experiencing diminished financial success and blamed declining sales on competing products that Holbus described as "cheater" waxes developed by competitors such as Turtle Wax.

Turtle Wax entered the automatic carwash market as a supplier of products in 1976. Turtle Wax has advertised and sold its products to consumers and retailers in the automatic carwash business under the product names Polyshell Triple Shine (Red, Blue, and Gold), Polish Wax and Cherry Polish Wax, Sealer Wax, and Super Foaming Sealer Wax. As with Hot Wax's "Hot Wax" products, these Turtle Wax products are typically sprayed onto the surface of an automobile at automatic carwash facilities.

According to Holbus, Hot Wax has suffered significant lost sales as a result of Turtle Wax's entry into the market. Hot Wax describes the products sold by Turtle Wax as non-wax spray products that Turtle Wax falsely promotes as wax for the automatic carwash industry because Turtle Wax's products contain mineral seal oils and wax emulsions that are less costly to produce than traditional natural and synthetic wax ingredients. Because Turtle Wax's products are less expensive to produce than Hot Wax's wax products, Turtle Wax has dominated the automatic carwash market to the point of becoming an industry leader. As a result of Turtle Wax's entry into this market, Hot Wax's presence in this market has been effectively reduced, and Hot Wax has experienced declining sales.

Holbus learned that Turtle Wax entered the automatic carwash market as a supplier sometime in the mid–1970's. It was also during this time that Holbus became aware of the nature of Turtle Wax's products; namely that the products sold by Turtle Wax neither contained natural or synthetic substances typically found in wax nor exhibited wax-like properties when applied to the surface of a car. Despite having this information, Holbus waited until 1993 to take any action with respect to his concerns.

In 1993, Holbus began a letter writing campaign directed at Turtle Wax and others accusing them of falsely advertising certain products for automatic carwashes as wax. In these letters, Holbus specifically accused Turtle Wax of having mislabeled its products for twenty years. In addition to sending a letter to Turtle Wax, Holbus also directed one of his letters to the Wisconsin Department of Agriculture, Trade and Consumer Protection requesting that it take action against the allegedly false advertising by Turtle Wax and other companies. In response to this letter, the Department informed Holbus that the term "wax" had grown to encompass a variety of substances, including those that fell outside the traditional definition of the term. The Department also stated that "it would [not] be possible to hold sellers of carwash products to a strict chemical definition of a word that has come to mean much more in everyday usage" and concluded that Turtle Wax had not violated any Wisconsin deceptive trade practice laws by labeling its automatic carwash products as waxes.

As a result of the ineffectiveness of his letter writing campaign, Holbus filed suit on behalf of Hot Wax in 1997 against Turtle Wax and eight other companies involved in selling products to the automatic carwash industry. Holbus accused Turtle Wax of misrepresenting the qualities of its products and sought both damages and injunctive relief. After the district court dismissed all defendants except for Turtle Wax because of improper joinder, Hot Wax filed an amended complaint alleging that Turtle Wax violated § 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125, because its

products, including Polish Wax, Cherry Polish Wax, Sealer Wax, Super Foaming Sealer Wax, Poly Sealant, and Poly Shell Triple Shine, contained no wax and did not protect or polish the surface of an automobile in the same manner as traditional wax products do.

Before the district court, the parties submitted cross motions for summary judgment. In support of these motions, the parties provided competing expert testimony regarding the industry definition of "wax" and whether Turtle Wax's products fell within this definition. The parties' experts also disputed the effectiveness of the products at issue and whether the products provided the type of protection typically associated with wax.

In addressing the motions for summary judgment, the district court concluded that neither Turtle Wax nor Hot Wax provided conclusive evidence regarding whether Turtle Wax's products falsely represented that they had certain qualities that would be material to a consumer's decision to purchase the product. The district court based this conclusion on the fact that the parties presented conflicting testimony and data regarding the effectiveness of Turtle Wax's products, the carwash industry's and consumer's understanding of the term "wax", and the appropriate definition of the term wax. For this reason, the district court denied both parties' motions to the extent the motions sought a dispositive ruling on the merits of Hot Wax's Lanham Act claims.

Despite not reaching the merits of Hot Wax's Lanham Act claims, the district court entered summary judgment in favor of Turtle Wax after concluding that the doctrine of laches barred these claims. The district court found that Hot Wax unduly delayed in pursuing · its claims against Turtle Wax in light of the fact that Holbus admitted that he believed as early as the mid-1970's that Turtle Wax misrepresented the character and quality of its products, yet did not file suit until 1997. The district court determined that

this unexplained delay prejudiced Turtle Wax due to the substantial investment Turtle Wax made both in product development and in promoting its products as waxes. The district court reasoned that, had Hot Wax filed its suit in a timely manner, Turtle Wax could have promoted its products as less costly but more effective alternatives to natural wax products. In finding the doctrine of laches applied, the district court rejected Hot Wax's arguments that laches should not preclude Hot Wax from maintaining its suit because: (1) the statute of limitations had not run; (2) Hot Wax's claim was akin to a claim at law for damages; (3) Turtle Wax's alleged unclean hands; and (4) laches is not an appropriate subject for summary judgment in Lanham Act false advertising cases. Hot Wax now appeals the district court's grant of summary judgment in favor of Turtle Wax on this issue.

## II. ANALYSIS

### A. Standard of Review

We typically review a district court's grant of summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party. *See Bombard v. Fort Wayne Newspapers,*

*Inc.*, 92 F.3d 560, 562 (7th Cir.1996). "A genuine issue of fact exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994).

The traditional standard of review in summary judgment cases must be considered in light of the notion that a district court enjoys considerable discretion in determining whether to apply the doctrine of laches to claims pending before it. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 181 (7th Cir.1994); *Lake Caryonah Improvement Ass'n v. Pulte Home Corp.*, 903 F.2d 505, 509 (7th Cir.1990) ("The decision of the trial court to invoke the doctrine of laches will not be disturbed absent a clear abuse of discretion."). To this end, in cases "in which there is no dispute as to the material facts, the district court's decision that laches bars the action is subject to review by the abuse of discretion standard." *Cannon v. University of Health Sciences/The Chicago Med. Sch.*, 710 F.2d 351, 359 (7th Cir.1983); *see also National Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 707 (5th Cir.1994) ("[A]s long as the district court applies the correct legal standard on summary judgment and does not resolve disputed issues of material fact against the nonmovant, its determination of whether the undisputed facts warrant an application of laches is reviewed for an abuse of discretion."). Therefore, while our review of the record is *de novo* in determining whether there are any disputed issues of material fact, our review of whether the district court properly applied the doctrine of laches is under an abuse of discretion standard.

## B. The Applicability of the Doctrine of Laches to Hot Wax's Lanham Act Claim

Hot Wax contends that Turtle Wax's use of the word "wax" in its description and marketing of certain products constitutes false advertising under § 43(a) of the Lanham Act. The Lanham Act prohibits false or misleading "commercial advertising or promotion of the nature, characteristics, qualities, or geographic origin of the advertiser's or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a).[1]

To establish a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir.1999). In addition, to recover money damages

---

1. Section 43(a) of the Lanham Act provides, in relevant part:

    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    \*     \*     \*

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

    shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

    15 U.S.C. § 1125(a).

under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages.

The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. When the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so. In contrast, when the statement is literally true or ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion. *See id.* at 971–72.

Although the district court in the present case denied both parties' motions for summary judgment on the issue of whether Turtle Wax's conduct constituted a violation of § 43(a) of the Lanham Act, the court also concluded that the doctrine of laches barred Hot Wax's Lanham Act claims and constituted a separate ground upon which to base the granting of summary judgment. Hot Wax contends that the district court's decision to apply the doctrine of laches to its case was erroneous for three reasons. First, it argues that under Illinois law, laches may not apply to actions at law seeking damages that are within the applicable statute of limitations. Second, it contends that the necessary requirements for the application of the doctrine of laches cannot be satisfied based on the facts of the present case. Finally, Hot Wax submits that Turtle Wax's alleged unclean hands and the public interest at stake in this case also preclude an application of the doctrine of laches.

## 1. Availability of the Doctrine of Laches

The equitable doctrine of laches is derived from the maxim that those who sleep on their rights, lose them.

Laches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it. For laches to apply in a particular case, the party asserting the defense must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom. *See Cannon,* 710 F.2d at 359.

Hot Wax argues that, under Illinois law, the equitable defense of laches does not apply to actions at law seeking damages that are filed within the statute of limitations. Hot Wax supports its argument with language included in such cases as *Maksym v. Loesch,* 937 F.2d 1237, 1248 (7th Cir.1991), in which this Court stated that "[i]n Illinois, ... the great weight of authority is that laches is a defense only in equity cases," and *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 260 (2d Cir.1997) (quoting *United States v. RePass,* 688 F.2d 154, 158 (2d Cir.1982)), in which the Second Circuit stated that "[l]aches is not a defense to an action filed within the applicable statute of limitations." According to Hot Wax, because its claim is one for damages as well as injunctive relief against Turtle Wax and because its claim was filed within the applicable statute of limitations, the doctrine of laches should not have been applied by the district court.

At the outset of our consideration of Hot Wax's argument, we note that contrary to Hot Wax's assertion, the application of federal law and not state law controls the outcome of this case. *See NLRB v. Natural Gas Utility Dist.,* 402 U.S. 600, 603–04, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971) (recognizing that absent plain indication to the contrary, Congress does not intend to make application of its statutes dependent upon state law); *see also TMT North America, Inc. v. Magic Touch GmbH,* 124 F.3d 876, 881 (7th Cir.1997) (analyzing Lanham Act claims "under the principles and case law of that statute"). Nonetheless, state law does affect a feder-

81

al court's determination of whether laches applies. Because the Lanham Act does not contain a statute of limitations, federal courts have referred to analogous state statutes of limitations to determine whether a presumption of laches should apply. *See Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996) ("Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense [in Lanham Act cases].").

Rather than refusing to apply laches when plaintiffs bring claims within the analogous state statute of limitations as Hot Wax suggests, courts have used this analogous limitations period as a baseline for determining whether a presumption of laches exists. *See Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365

(6th Cir.1985) ("Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a 'presumption of laches.' This principle 'presumes' that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period."). In the context of the Lanham Act, this framework makes particularly good sense. The notion of a "continuing wrong," which is so prevalent in Lanham Act cases, provides a strong justification for the application of the doctrine of laches in appropriate circumstances regardless of whether the plaintiff has brought suit within the analogous statute of limitations. Under the notion of a continuing wrong, "only the last infringing act need be within the statutory period." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983). Without the availability of the application of laches to a claim arising from a continuing wrong, a party could, theoretically, delay filing suit indefinitely. It would certainly be inequitable to reward this type of dilatory conduct and such conduct would necessarily warrant application of laches in appropriate circumstances.[2] Thus, we con-

2. Some federal courts have rejected the application of the doctrine of laches within the applicable statute of limitations with respect to other federal statutes. In *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164 (8th Cir.1995), the Eighth Circuit determined that the principle of separation of powers precluded federal courts from applying the equitable defense of laches to claims involving statutes in which Congress has prescribed an express statute of limitations: "[S]eparation of powers principles dictate that federal courts not apply laches to bar a federal statutory claim that is timely filed under an express federal statute of limitations." *Id.* at 170. This rule recognizes that express statutes of limitations reflect a congressional "value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Id.* at 169 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)).

The court in *Ashley* did, however, note that the principle of separation of powers did not pose quite the same stumbling block to the application of the doctrine of laches in cases in which Congress did not prescribe an express statute of limitations and instead, by its silence, chose to borrow the most analogous state statute of limitations. *Ashley*, 66 F.3d at 170 n. 4. The Second Circuit declined to follow this reasoning in *Ivani*, 103 F.3d at 260–61. The Second Circuit explained that "Congress's decision to incorporate state law ... does not reflect indifference. Rather, Congress is thereby adopting a predetermined balance between competing policies that has the added virtue of promoting neutral rules of decision in a crucial area of law." *Id.* Therefore, the court concluded that laches could not be applied to bar claims brought under 42 U.S.C. §§ 1981, 1983 and 2000d (which contain no express statute of limitations) because "[a] federal legislative decision to borrow a state statute of limitations for a federal substantive statute is ... a legislative choice that separation of powers principles compel us to respect." *Id.* at 261.

The conclusions reached by the Second Circuit in *Ivani* must be considered in light of the same court's holding in *Conopco*, 95 F.3d at 190, in which the Second Circuit reiterated that laches could be applied in Lanham Act

clude that whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case.

■ Hot Wax's contention that the doctrine of laches should not apply to its claims under the Lanham Act because its claims are for damages as well as injunctive relief is also without merit. The Lanham Act specifically contemplates that both injunctive relief and awards of damages for violations of 15 U.S.C. § 1125 shall be subject to the principles of equity, which include the doctrine of laches. *See* 15 U.S.C. § 1125(c)(1) & (2); *see also Maksym*, 937 F.2d at 1247 (explaining the equitable nature of the doctrine of laches). We have also recognized in other contexts that although laches is an equitable doctrine, courts increasingly apply it in cases at law in which plaintiffs seek damages. *See Maksym*, 937 F.2d at 1247–48 ("Laches is an equitable doctrine but one increasingly applied in cases at law ... as well."); *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir.1978) (recognizing in a trademark infringement case that the doctrine of laches precluded recovery of damages for the period prior to the filing of the plaintiff's claim). Accordingly, we find nothing to preclude the application of laches to Hot Wax's requests for both equitable relief and damages.

## 2. Application of the Doctrine of Laches

Having addressed Hot Wax's preliminary arguments regarding the availability of the doctrine of laches as a defense in this case, we may now turn to the actual facts of the case to determine whether the criteria for the application of laches have been satisfied. The application of laches in a particular case is dependent upon a

showing of an unreasonable lack of diligence by the party against whom the defense is asserted and prejudice arising from this lack of diligence. *See Conopco*, 95 F.3d at 192; *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir.1987). Hot Wax contends that the district court erred with respect to its conclusions regarding whether Hot Wax unreasonably delayed in filing suit and whether Turtle Wax was prejudiced by such a delay. However, based on the facts contained in the record, we conclude that the district court properly determined that Hot Wax's unreasonable delay in pursuing its claim against Turtle Wax prejudiced Turtle Wax and justified the application of the doctrine of laches.

### a. Hot Wax's Unreasonable Delay

■ Evidence in the record demonstrates that Holbus believed as early as the late–1970's that Turtle Wax misrepresented the character and quality of its automatic carwash products. Although Hot Wax disputes this fact on appeal, Hot Wax's Local Rule 12(N) Statement belies any argument to the contrary. In its Local Rule 12(N) Statement, Hot Wax admitted that "[s]ometime in the late 1970's or early 1980's, Ed Holbus concluded that Turtle Wax's products for automatic carwashes did not contain wax or exhibit wax-like properties." Furthermore, this admission is bolstered by paragraphs found in Hot Wax's Statement of Additional Facts attached to its Local Rule 12(N) Statement. In these paragraphs, Hot Wax acknowledges that:

> Beginning in, and throughout much, if not all, of the 1970s and continuing through the present, Turtle Wax has represented, marketed, advertised and sold to customers and retailers through-

cases prior to the expiration of the analogous state statute of limitations and that the limitations period merely provided a mark for determining whether a presumption of laches would apply in a particular case. Lanham Act claims have traditionally been considered

in light of such presumptions, *see Tandy*, 769 F.2d at 365, and Congress has expressly contemplated in the text of the statute that equitable defenses, which include the doctrine of laches, are available in Lanham Act cases, *see* 15 U.S.C. § 1125(c)(2).

out the United States, products identified as "wax" under the product names Sealer Wax, Polish Wax, Cherry Polish Wax, Poly Sealant, Polyshell Triple Shine (Red, Blue and Gold), and Super Foaming Sealer Wax.

\* \* \*

According to the President of Hot Wax, Edward Holbus, Hot Wax has and continues to suffer significant lost sales ever since Turtle Wax entered the market with non-wax products which Turtle Wax promotes as "wax" for the car wash and wax industry.

Hot Wax also ignores Holbus's correspondence that supports Hot Wax's admission of knowledge of the facts which form the basis of its Lanham Act claims. In a letter to the *Chicago Tribune* dated January 4, 1993, Holbus wrote that "[f]or almost twenty years Turtle Wax has in our opinion succeeded in victimizing the motoring public in a massive fraud. They advertise wax products that are nothing more than kerosene or similar oils.... [S]ince 1975 Turtle Wax has advertised a number of products.... [N]one of these products contain any wax." Similarly, in a letter to the President of Turtle Wax dated May 26, 1993, Holbus stated his belief that "[d]uring the last twenty years, [Turtle Wax] has engaged in a widespread conspiracy with [its] distributors and others to deny our company a fair market share of the wax business," and referred to Turtle Wax's products as "cheater waxes."

Hot Wax's effort to cast the district court's conclusion regarding the unreasonable nature of its delay as an "oversimplification" of the actual factual development of this case also falls short of demonstrating that the district court erred in the present case in calculating the delay and its unreasonableness. Rather than identifying a specific time that it became aware of the nature of Turtle Wax's products, Hot Wax points to the "evolutionary development of marketing by Turtle Wax which, over the course of time, became literally false and misleading" and the need for "chemical

analysis of the composition of various products" as a justification for not filing its false advertising claims under the Lanham Act earlier. When Hot Wax's assertion of the "evolutionary development" of its claims is juxtaposed against the admissions in Hot Wax's Local Rule 12(N) Statement, it becomes clear that this claim is nothing more than a *post hoc* rationalization for Hot Wax's unreasonable delay. The record indicates that Hot Wax conducted analyses of Turtle Wax's products (by its own expert) only *after* its suit had been filed in 1997. Based on the evidence in the record, it would be disingenuous for Hot Wax to argue that its decision to file suit was motivated by anything other than Holbus's belief that Turtle Wax's products did not contain wax or exhibit wax-like properties. Likewise, it would be troublesome, to say the least, if we permitted Hot Wax to rely on the need to assess the "evolutionary development" of Turtle Wax's marketing campaigns to justify its delay. "[I]t cannot be equitable for a well–informed merchant with knowledge of a claimed invasion of right, to wait to see how successful his competitor will be and then destroy with the aid of court decree, much that the competitor has striven for and accomplished." *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 498 (2d Cir.1961) (citation omitted).

Hot Wax's final attempt to justify its unreasonable delay in pursuing its claims against Turtle Wax rests on the belief that the delay is somehow excusable because it resulted from its attempts to resolve the claims without recourse to litigation. Between 1993 and 1995, Hot Wax sent a total of five letters to the *Chicago Tribune*, Turtle Wax, and the Wisconsin Department of Agriculture, Trade and Consumer Protection concerning the marketing of Turtle Wax's products. Although we have recognized that "[a]ttempts to resolve a dispute without resorting to a court do not constitute unreasonable delay" for determining the applicability of the doctrine of laches, *Leon-*

*ard v. United Airlines*, 972 F.2d 155, 158 (7th Cir.1992), Hot Wax's sparse letter writing campaign can hardly be characterized as a serious attempt to resolve its concerns regarding Turtle Wax's products and advertising. There is no evidence in the record that Hot Wax suggested or pursued any type of bilateral solutions or provided an explanation regarding Hot Wax's inactivity regarding its efforts to resolve its claims outside the 1993–1995 period that would provide a stronger basis for excusing its otherwise unreasonable delay.

**b. Prejudice to Turtle Wax Resulting from Hot Wax's Unreasonable Delay**

■ In addition to showing unreasonable delay, a party seeking to avail itself of the equitable defense of the doctrine of laches must also show that the party has been prejudiced by the plaintiff's unreasonable delay in pursuing its cause of action. *See Conopco*, 95 F.3d at 192. "A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim .... [and] ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Id.* (quotation marks and citations omitted). In this context, we have explained that "laches is a question of degree." *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir.1985). To this end, "[i]f only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Zelazny v. Lyng*, 853

F.2d 540, 543 (7th Cir.1988) (quoting *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 807 (8th Cir.1979)).

■ The prejudice resulting to Turtle Wax as a result of Hot Wax's unreasonable delay is clear and is sufficient to justify the application of laches given the great length of the delay. Hot Wax permitted Turtle Wax's advertising and the development of its products to go unchecked for well over a ten- to twenty-year period. During this time, Hot Wax sat idly by and chose not to challenge Turtle Wax's use of the term "wax" with respect to its products, and Turtle Wax invested significant amounts of time and money in product development and advertising. Indeed, rather than contesting Turtle Wax's use of the term "wax" in this regard, Hot Wax attempted to break into the same market with the development of similar products that it also referred to as "wax," even though these products had many of the same properties and characteristics as the Turtle Wax products at issue. The market position pursued by Turtle Wax with respect to the products at issue was uncontested by Hot Wax for years and courts have held that investments to exploit such a position are sufficient prejudice to warrant the application of the doctrine of laches. *See, e.g., Conopco*, 95 F.3d at 192; *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 701 (7th Cir.1982). Had Hot Wax successfully pressed its claims in a timely manner, Turtle Wax certainly could have invested its time and money in other areas or simply renamed its products. Accordingly, in light of the extreme length of the unreasonable delay by Hot Wax, we conclude that the district court did not err in concluding that Turtle Wax was prejudiced by this delay.[3]

**3.** In the context of a trademark infringement action, we have stated that although laches may bar a plaintiff from recovering damages or wrongfully derived profits during the time prior to filing suit, "[u]pon a showing of infringement ... the plaintiff may still be entitled to injunctive relief ... and to damages

and profits for the period subsequent to the filing of suit" because of the continuous nature of trademark infringement. *James Burrough*, 572 F.2d at 578. In the present case, the district court recognized this possibility, but concluded that the extreme circumstances and egregious delay by Hot Wax in the pres-

### 3. Unclean Hands and the Public Interest

The final hurdles that Hot Wax asserts stand in front of the application of the doctrine of laches come in the form of the doctrine of unclean hands and the public interest. Hot Wax's position with respect to the doctrine of unclean hands and the public interest as a bar to laches stems from the district court's denial of the parties' motions for summary judgment based on its reasoning that:

> In the case at bar ... neither party has provided conclusive evidence that Turtle Wax's products—while not meeting the chemical definition of a wax—falsely represent that they have certain qualities that are material to a consumer's decision to purchase the product. The parties have presented conflicting testimony and data regarding the effectiveness of Turtle Wax's products, the car wash industry's and consumer's understanding of the term "wax", as well as the appropriate definition of the term wax.

> \* \* \*

> ... In the instant case, we are presented with conflicting expert testimony regarding the acceptable definition of wax, and competing evidence as to industry standards.... In light of the conflicting testimony, and because we must draw all inferences against the moving party, we find that the disposition of this issue is properly left to the trier of fact.

ent case warranted a complete denial of equitable injunctive relief. To support this conclusion, the district court relied on *Seven–Up Co. v. O–So–Grape Co.*, 283 F.2d 103, 106 (7th Cir.1960), in which we stated that "in many instances, the delay may be so prolonged and inexcusable that it would be inequitable to permit the plaintiff to seek injunctive relied as to future activities."

Although Hot Wax does not specifically address this matter in its brief on appeal, we see no error in the district court's handling of this issue. Counsel for Hot Wax suggested during oral argument that the issue of damages was

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 27 F.Supp.2d 1043, 1048 (N.D.Ill.1998). According to Hot Wax, the district court's conclusion that an issue of fact existed with respect to its literal falsity claim should have required the district court to provide Hot Wax with an opportunity to prove facts that would have precluded the application of the doctrine of laches as a result of either unclean hands or the public interest.

#### a. Unclean Hands

A party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances. The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice. *See Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").

Hot Wax asserts that Turtle Wax's unclean hands result from the fact that Turtle Wax is allegedly engaged in a form of fraud—the false advertisement that certain Turtle Wax products contain wax or exhibit wax-like properties when, in Hot Wax's opinion, they do not. In light of this alleged fraud, Hot Wax, relying on *La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 439, 24 S.Ct.

no longer before the district court. This position stands in direct conflict with the position taken by Hot Wax in its brief to support its argument that laches could not be applied in this case: "[T]he doctrine of laches, an equitable defense, should not be applied to bar Hot Wax from recovering Turtle Wax's wrongfully gained profits." Regardless of whether Hot Wax's request for relief is solely for an injunction, requests for injunctive relief under the Lanham Act are subject to equitable considerations, including the doctrine of laches. *See Conopco*, 95 F.3d at 190–94.

145, 48 L.Ed. 247 (1903), asserts that "laches [is] not available in a case of actual fraud."

A broad chasm separates the concept of actual fraud considered by the Supreme Court in *La Republique Francaise* as a bar to the application of the doctrine of laches and the facts of the present case; broad enough, indeed, to defeat Hot Wax's contention that Turtle Wax has sought the benefit of the equitable defense of laches with less than clean hands. Turtle Wax's marketing of the products at issue as "waxes" can hardly be considered willful fraud, given the evidence presented to the district court regarding the industry's use of the term "wax." While the evidence may not have been conclusive so as to warrant a grant of summary judgment on behalf of Turtle Wax with respect to the merits of Hot Wax's Lanham Act claims, the inability to prevail at the summary judgment stage on this issue hardly translates into proof of unclean hands sufficient to preclude an application of laches. To conclude otherwise would be effectively to preclude the application of laches whenever a dispute of fact regarding the merits of a Lanham Act claim existed because, as Turtle Wax points out, conceivably all suits involving Lanham Act claims could involve accusations of fraudulent or deceptive conduct.

Before the district court, Turtle Wax submitted evidence in an effort to refute Hot Wax's allegation that Turtle Wax set out to deceive the public through the marketing campaign of its products. Turtle Wax provided evidence that its competitors used the term "wax" to refer to nontraditional "wax" products similar to those marketed by Turtle Wax as "wax" products. Furthermore, Turtle Wax also tellingly pointed to the Wisconsin Department of Agriculture, Trade and Consumer Protection's letter to Holbus informing him that the term "wax" had grown to encompass a variety of substances including those that fell outside the traditional definition of this term. The Department rec-

ognized that "it would [not] be possible to hold sellers of carwash products to a strict chemical definition of a word that has come to mean much more in everyday usage." The district court concluded that the evidence submitted by Turtle Wax was "evidence of industry and consumer expectations—evidence that Hot Wax fails to rebut." *Hot Wax*, 27 F.Supp.2d at 1053. In light of our review of the record, this conclusion is one with which we can find no fault. Absent some affirmative showing by Hot Wax of some willful, egregious, or unconscionable conduct or bad faith on the part of Turtle Wax directly bearing on the availability of an equitable remedy such as laches, we will not disturb the district court's conclusion on the issue of the existence of unclean hands.

### b. The Public Interest

"[L]aches may be properly applied so long as its application is equitable in light of the public's interest in being free from confusion and deception." *Conopco*, 95 F.3d at 193. In this regard, we recognize that there is a strong public interest in the prevention of misleading advertisements. The availability of an equitable defense in Lanham Act cases, therefore, must be considered in light of the consuming public's right to be free from confusion with respect to product marketing and advertisements. *See id.* at 193–94; *cf. James Burrough*, 572 F.2d at 578.

Hot Wax submits that the public interest in the present case militates against a finding of laches. This argument is based on Hot Wax's belief that it is untenable on one hand for the district court to recognize an issue of fact with respect to its Lanham Act claims, and yet conclude on the other that Hot Wax's claims are barred by laches.

It is evident that the notion of the public's interest to be free from confusion with respect to products in the marketplace alone cannot stand as a bar to the application of laches in cases involving Lanham

Act claims. Moreover, Hot Wax's argument with respect to the public interest ignores the fact that Turtle Wax submitted evidence before the district court demonstrating that the expectations of the vast majority of purchasers of wax in a carwash are satisfied by the performance of Turtle Wax products and that the performance of these products is within the realm of their expectations. To the contrary, Holbus testified during his own deposition that he had not conducted any type of consumer research (other than talking to customers at carwashes), nor had any research been performed on his behalf or on behalf of any of the companies in which he possessed an ownership interest, regarding consumer expectations of automated carwashes. And, although by no means dispositive of the issue of the public interest, it bears repeating that Turtle Wax received a letter from a state governmental consumer agency stating that the agency did not believe Turtle Wax was misrepresenting its products or deceiving customers. Given the fact that there has been no clear showing that the marketing of Turtle Wax's products has had or is having a negative impact on the public interest, we conclude that the public interest does not stand in the way of the application of the doctrine of laches in the present case.

### III. CONCLUSION

We conclude that the application of the doctrine of laches to Hot Wax's Lanham Act claims by the district court was proper. The judgment of the district court granting summary judgment in favor of Turtle Wax is

AFFIRMED.