**ILLINOIS DEPARTMENT OF HUMAN SERVICES,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF EDUCATION, et al., Defendants.**

**No. 02 C 6721.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 5, 2003.

Katherine Harvie Laurent, Deborah Louse Simpson, Illinois Atty. General's Office, Chicago, IL, for Plaintiff.

Joshua Z. Rabinovitz, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Randy Joseph Curato, Bell, Boyd & Lloyd, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

MORAN, Senior District Judge.

The Illinois Department of Human Services seeks judicial review of an arbitration panel decision from the United States De-

partment of Education Rehabilitation Services Administration. Defendants move for summary judgment on the complaint. For the following reasons, defendants' motion is granted.

## BACKGROUND

In February 1998, the United States Department of the Navy (the Navy) sought outside support staff for its mess halls at the Naval Training Center at Great Lakes. Soon after, the Illinois Department of Human Services (the State) notified the Navy of its wish to secure the contract under the Randolph–Sheppard Act (RSA), 20 U.S.C. § 107 *et seq.*, a federal statute that, through a partnership with state agencies, provides for the licensing of blind persons to operate vending facilities on federal property. The Navy instead moved to contract under the Javits–Wagner–O'Day Act (JWOD), 41 U.S.C. § 46–48c, an act that establishes a "Committee for Purchase From People Who Are Blind or Severely Disabled" (the committee), which procures services for federal facilities from qualified nonprofit agencies for the blind. On May 12, 1998, the Navy sent a letter to the State informing it of this plan to contract for services under the JWOD.

On October 1, 1998, the Navy contracted with GWS services, a subsidiary of the nonprofit agency Goodwill Industries. On December 28, 1998, the State sent a letter informing the Navy that the contract should be awarded under the Randolph–Sheppard Act and contesting any contrary action. The Navy responded on April 6, 1999, stating that its needs were met through the JWOD program and that it would maintain the contract with GWS.

On October 10, 2000, the State filed an arbitration request with the United States Secretary of Education, and an arbitration panel was convened to hear the State's grievances. After two days of hearings the panel dismissed the complaint, finding that the State unreasonably delayed in filing its arbitration request. The State comes to this court seeking review of the panel's action.

## DISCUSSION

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We also review the arbitration panel's decision with a high degree of deference, setting it aside only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While this standard of review requires that we examine the panel's reasoning, the decision will be upheld "as long as the agency's path can be reasonably discerned." *Mt. Sinai Hospital Medical Center v. Shalala*, 196 F.3d 703, 708 (7th Cir.1999).

The burden of proof is on the State to demonstrate that the arbitration panel's decision was improper. *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir.1995). Defendants move for summary judgment arguing that the decision has a well-reasoned and rational basis and as a result the State cannot meet its burden. The State counters that the use of an equitable defense in this decision was not in accordance with law and that viewing the facts in the light most favorable to the plaintiff the application of laches was arbitrary and capricious.

In its decision to dismiss the State's complaint the panel did not reach the issue of whether the Navy violated the RSA *(panel op. at 22)*. Instead, the panel found

that the State delayed in seeking arbitration under RSA to the prejudice of the Navy and, as a result, it waived its right to arbitration. *Id.* In so deciding, the panel applied the doctrine of *laches.* We limit our review, then, to determining whether the application of *laches* was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

The panel was appointed pursuant to the arbitration provisions of the RSA, 20 U.S.C. § 107, *et al:*

Section 107d–1

(b) Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States...is failing to comply with the provisions of this chapter or any regulations issued thereunder...such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate dispute pursuant to section 107d–2 of this title...

Section 107d–2.

■(a) Upon receipt of a complaint filed under section 107d–1 of this title, the Secretary shall convene an ad hoc arbitration panel as provided in subsection (b) of this section. Such panel shall, in accordance with the provisions of subchapter II of chapter 5 of Title 5, give notice, conduct a hearing, and render its decision which shall be subject to appeal and review....

(b)(2)...If the panel...finds that the acts or practices of any such department, agency, or instrumentality are in violation of this chapter, or any regulation issued thereunder, the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel."

The State argues that since the panel was convened by the Secretary to address the issue brought forward in its grievance complaint, it must directly address that issue rather than abort the decision-making process before reaching the substantive question. The State has offered some support for the proposition that a substantive issue should be ruled upon by an agency if it was presented to the examiner at all stages of a proceeding, *see e.g., Freight Forwarders Institute v. U.S.,* 263 F.Supp. 460, 469 (D.C.N.Y.1967). But the general rule is that agencies are not required to make findings on issues not necessary to their adjudications. *Immigration and Naturalization Service v. Bagamasbad,* 429 U.S. 24, 25–26, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976). We are unable to find any provision of the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.,* the RSA, or any of the corresponding regulations which states otherwise.

■ The Randolph Sheppard Act does not specify a time limit in which grievances must be brought. Although courts may borrow state statutes of limitation when federal statutes are silent, they should not adopt them if to do so would be inconsistent with the underlying policies of the federal statute. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Here the panel found that the analogous state statute was not applicable, noting that the short time frames required for procedures under the RSA, as well as general federal procurement protest deadlines, "depict a policy of prompt resolution of disputes over government contracts, which can only be harmed by delayed battles among competing interests" *(panel dec. at 21).* The statutory provisions cited by the panel provide an adequate basis for its conclusions that there is a policy of prompt resolution underlying the RSA.

■ As an alternative to adopting a state statute, some courts, citing *Occiden-*

*tal,* have applied the defense of *laches.* *See e.g. EEOC v. Acorn Niles Corp.,* 1995 WL 519976, *4 (N.D.Ill.1995) *citing Jeffries v. Chicago Transit Authority,* 770 F.2d 676, 680 (7th Cir.1985) *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986) (applying *laches* to a Title VII case). *Laches* bars a plaintiff from seeking redress if he unreasonably delayed before asserting his claim and the delay prejudiced the defendant. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 820 (7th Cir.1999). While we can find no case definitively addressing the issue, at least one circuit court has suggested a *laches* defense could be properly raised in an administrative proceeding under the RSA. *See Fillinger v. Cleveland Society for the Blind,* 591 F.2d 378, (6th Cir.1979). In light of the available caselaw (and absence of caselaw) the panel's decision to consider the defense of laches as grounds for dismissal was not contrary to law. We will only disturb the panel's decision, then, if no rational basis for the findings of delay or prejudice can be found.

■ The State filed its grievance 30 months after learning that the contract would be granted under the JWOD and 18 months after its last communication with the Navy. The panel's finding of delay was a rational step from its conclusion that there is a policy of prompt resolution underlying the RSA. In light of the emphasis on expediency in responding to grievances filed under the RSA, it was rational for the panel to extend the requirement for haste to the grievance filing and to find unreasonable the 30 months that elapsed after the State was told the contract would be granted under the JWOD. The panel rejected the State's asserted reasons for the delay, that it needed the time to internally

debate whether to go forward with arbitration and had to react to the Navy "pitting" it against another constituency of the State. The State bore the burden of explaining the delay, *Lingenfelter v. Keystone Consol. Indus., Inc.,* 691 F.2d 339, 340 (7th Cir.1982), and we find nothing arbitrary, capricious, or manifestly erroneous about the panel's conclusion that the State's explanations were inadequate.

We next turn to the issue of prejudice. Prejudice "ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Hot Wax,* 191 F.3d at 824, *internal citations omitted.* The panel found that the State's delay prejudiced the Navy, noting that a future re-award of the contract would be financially costly to the Navy, would hurt the efficiency and quality of the food services to the Navy's recruits, and could potentially result in loss of morale. The panel also highlighted the potential harm to Goodwill Industries and its employees.

The State argues that the panel erred in considering the hypothetical costs to the Navy, rather than looking back at what prejudice has already occurred. But the State misstates the test. It is not what harm has already occurred, but rather how the Navy has changed its position during the delay such that allowing the late challenge to its program would be inequitable. *Id.* The panel found that, during the time leading up to the grievance filing, the Navy invested in "[a]n extensive network of training, recruiting and management." Under the deferential standard of review, the changes and investments made by the Navy in the two years leading up to the filing of the grievance provide an adequate basis for the panel's finding of prejudice.[1]

---

**1.** The State also disputes the panel's reliance on the potential prejudice to Goodwill Industries since the test should be the prejudice to the Navy not to a third party. As stated above, however, there is enough basis for the finding of prejudice in the Navy's investment of the programs alone.

*CONCLUSION*

For the above reasons, defendants' motion for summary judgment is granted.