**THOMAS CONSOLIDATED INDUSTRIES, INC. and Robert Thomas, Plaintiffs–Appellants,**

v.

**KOSTER GROUP, INC.,
Defendant–Appellee.**

No. 02–3660.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 2003.

Decided March 10, 2004.

Robert C. Thomas, Hinsdale, IL, for Plaintiff–Appellant.

John L. Leonard, Teeple & Leonard, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Robert Thomas formed Thomas Consolidated Industries, Inc. ("TCI") to acquire used industrial machinery and equipment from two companies in Chicago. Before completing the purchase of this machinery and equipment, TCI received an appraisal from the Koster Group, Inc. advising TCI that the assets had an auction value of $1,044,175.00. TCI's fortunes were sliding, however; it ultimately filed for bankruptcy in April 1999, about a year and a half after the appraisal. Shortly thereafter, the equipment was auctioned off for only $250,000.00. TCI now accuses Koster of breach of contract, negligence and fraud. The district court agreed with Koster that TCI could not demonstrate any deficiencies in the Koster appraisal. TCI appeals, and we affirm.

## I

Sometime in 1996, Thomas became interested in purchasing two businesses located in Chicago, Illinois, Standard Die Mold ("Standard") and Phoenix Die Mold ("Phoenix"). Thomas met with Foothill Capital Corporation ("Foothill") to explore financing options for this acquisition. On January 23, 1997, Thomas received a letter of intent from Foothill that proposed a financing arrangement under which Foothill would provide the capital for the acquisition, subject to several conditions, including an appraisal of the Standard and Phoenix assets. Foothill recommended that Thomas make arrangements with Koster, one of the appraisers on its approved list. On behalf of TCI, which Thomas had incorporated in Illinois for the purpose of buying Standard and Phoenix, Thomas agreed to Foothill's terms.

On March 24, 1997, Koster delivered a detailed appraisal report to Thomas stating that the auction value of the Standard and Phoenix assets totaled $1,044,175.00. The report described the methodology Koster used to arrive at this figure and included limiting conditions that insulated Koster from liability for changes in the market environment. TCI had no further dealings with Koster after it completed the appraisal.

TCI finally acquired Standard and Phoenix in December 1997. The next year and a half fell well short of Thomas's hopes for the company, and in April 1999, TCI filed for bankruptcy protection. As part of that process, TCI's creditors arranged for an auction of the Standard and Phoenix assets. The auction, which took place in July 1999, was poorly advertised. At the auction, the Standard and Phoenix assets netted only $250,000.00, well short of Koster's figure of $1,044,175.00. The discrepancy prompted TCI and Thomas to sue Koster for negligent and fraudulent misrepresentation and for breach of its contract with TCI. The suit invoked the federal court's diversity jurisdiction, as Thomas is a citizen of Illinois and TCI is an Illinois

corporation with its principal place of business in Illinois, while Koster is a New York corporation with its principal place of business in New York; the amount in controversy plainly exceeded $75,000. At the completion of discovery, each side filed a motion for summary judgment.

In support of its motion for summary judgment, Koster provided testimony demonstrating that exogenous circumstances, like the Asian financial crisis and the "Y2K scare," caused market conditions for used industrial equipment to deteriorate between Koster's appraisal in 1997 and the auction sale in 1999. Koster also presented evidence to suggest that the auction was poorly run and that this may have contributed to the low prices paid for the Standard and Phoenix assets. Thomas/TCI relied primarily on the testimony of Donald Capoccia, a floor operations employee at Phoenix, who appraised the equipment in December 2001 at an auction value of $309,350.00. Capoccia's "appraisal," conducted almost five years after the Koster appraisal and two-and-one-half years after the auction sale, appears to be nothing more than handwritten numbers Capoccia placed alongside Koster's original figures. The district court concluded that this was not enough to raise a genuine issue of material fact, and thus granted Koster's summary judgment motion.

## II

TCI urges us to find that Capoccia's testimony was enough to entitle it to a full trial, and that if believed by a trier of fact, it would show that Koster committed fraud, negligence, or breach of contract. We review a district court's grant of summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184 (7th Cir.1996). "Federal Rule of Civil Procedure 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning even one essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 323. A genuine issue of fact exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir.1999) (internal citation omitted).

In Illinois, a plaintiff must prove five elements in order to succeed on a claim for fraudulent misrepresentation: a false statement of material fact; knowledge or belief of the falsity by the party making it; the intention to induce the other party to act; action by the other party in reliance on the truth of the statements; and damage to the other party resulting from such reliance. *Bd. of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580, 591 (Ill.1989) (internal citations omitted). Negligent misrepresentation has essentially the same elements, except that the defendant need not know that the statement is false. Rather, the defendant's own carelessness or negligence in ascertaining its truth will suffice. *Id.* Under a theory of negligent misrepresentation, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information. *Id.;* see also *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill.App.3d 927, 274 Ill.Dec. 461, 791 N.E.2d 553, 562 (Ill.App.Ct.2003).

The bare fact that the value of equipment appraised in 1997 declined substantially by the time it was sold two years later, with nothing more, is not enough to support a claim that the appraiser fraudulently or negligently misrepresented its value. TCI/Thomas can point only to this drop in value, putting the Capoccia testimony to one side for the moment, to show that Koster made a "false" statement. Koster on the other hand provided unrebutted testimony showing that the reduction in value could be explained by deteriorating market conditions and a poorly run auction. Capoccia's "appraisal" does not supply the missing link for TCI/Thomas. Capoccia—at least according to the evidence of record—had no experience as an appraiser; he did not specify what methodology he employed to arrive at his handwritten numbers; and he did not suggest that Koster's appraisal was deficient in any way. Finally, with respect to its breach of contract claim, TCI/Thomas did not produce even a scintilla of evidence suggesting that Koster failed to perform its duties or performed them negligently. A party hoping to avoid summary judgment must present definite, competent evidence to rebut the motion. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001) (internal citation and quotation marks omitted). TCI has failed to do so. Accordingly, the judgment of the district court is AFFIRMED.