**CHRYSLER MOTORS CORPORATION, Plaintiff,**

v.

**ALLOY AUTOMOTIVE COMPANY, INC., Defendant.**

No. 85 C 3217.

United States District Court, N.D. Illinois, E.D.

March 18, 1987.

William A. Van Santen, John S. Mortimer, Chicago, Ill., Don K. Harness, Jeffrey A. Sadowski, Birmingham, Mich., Wood, Dalton, Phillips, Mason & Rowe, Chicago, Ill., for plaintiff.

Lionel G. Gross, Robert K. Blain, Altheimer & Gray, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff, Chrysler Motors Corporation (Chrysler) brings this Lanham Act action against its former licensee, defendant, Alloy Automotive Company, Inc. (Alloy). The complaint alleges Alloy sold automotive repair parts in packaging bearing Chrysler's name and marks, without license or permission to do so. Chrysler seeks relief for trademark infringement (Count I), unfair competition (Count II), and a variety of pendent state law violations (Count III). Alloy filed an answer denying all material allegations in the complaint. Now Alloy has amended its answer and raised the affirmative defense that Chrysler abandoned its trademarks by failing to monitor the products Alloy produced for Chrysler. Chrysler contends Alloy is estopped from raising this defense and moves to strike it pursuant to Fed.R.Civ.P. 12(f).

### I. Factual Background

Chrysler manufactures and sells automobiles, trucks, and parts and accessories for servicing them. To identify their products, Chrysler has adopted and registered a variety of trademarks. See Complaint at ¶¶ 3, 4. Chrysler, however, does not manufacture all the parts and accessories for its vehicles. Rather, Chrysler purchases parts from independent manufacturers who make the products to Chrysler's specifications. As part of such an agreement, Chrysler licenses the manufacturer to print the registered Chrysler trademarks on the products' packaging.

Alloy served as a Chrysler licensee for an unspecified period of time. As a licensee, Alloy received the printing plates necessary to affix the Chrysler trademarks. In addition, Alloy promised to assure that no unauthorized or improper use of the Chrysler trademarks would be made. Brief in Support of Plaintiff's Motion to Strike at Appendix A.

In 1981, Alloy's license was terminated for reasons not specified to the court. See Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike at 2. In 1985, Chrysler brought this action alleging Alloy sold parts in packaging containing the Chrysler trademarks after its license was terminated. In defense, Alloy now claims Chrysler has abandoned its right to enforce its marks because it failed to properly monitor the products Alloy produced for Chrysler.

### II. Discussion

■ Under the doctrine of licensee estoppel, during the course of the license, a licensee is estopped from claiming it owns or disputing the validity of the licensor's trademark. See Smith v. Dental Products Co., Inc., 140 F.2d 140, 148 (7th Cir.), cert. denied, 322 U.S. 743, 64 S.Ct. 1146, 88 L.Ed. 1576 (1944); Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., Inc., 343 F.2d 655, 657 (7th Cir.1965). The basis for this rule is that a licensee who freely enters into a license and pays royalties or agrees to the limitations imposed by a li-

censor effectively recognizes that the licensor possesses a valid trademark. *Smith,* 140 F.2d at 148.

 Moreover, after a license terminates, a former licensee is still estopped from challenging its former licensor's trademark based upon facts which arose during the course of the license. *Smith,* 140 F.2d at 148; *Professional Golfers Association v. Bankers Life & Casualty Co.,* 514 F.2d 665, 671 (5th Cir.1975); Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* 454 (1969). However, as to facts which arise after the license has been cancelled, the former licensee stands in the shoes of any third party and may challenge its former licensor's mark. *Id.*

In reaching this holding, the court is mindful of the language in *Duncan* which notes that "it has been held that an estoppel by a licensee to deny the validity of licensor's trademark expires with the license." *Duncan,* 343 F.2d at 658. Nonetheless, the court does not find *Duncan* to be controlling. First, the language in *Duncan* was merely dicta. The *Duncan* court first and foremost held the defendant was *not* a former licensee because the purported licensing agreement was invalid due to a mutual mistake at the time of formation. *Id.* Second, a ruling which adopted a broad interpretation of the *Duncan* dicta would effectively vitiate the notion of licensee estoppel given that most disputes of this nature will arise after a license has been terminated. The intermediate rule retains the common sense notion that a licensee contractually recognizes the validity of the trademark, but grants the former licensee the same rights as any third party as to facts which arise after the license terminates. Finally, *Duncan* did not involve a case in which the licensee could only use the trademark when selling goods to the licensor. When that additional contractual restraint is involved, the analysis of *Smith,* as opposed to the brief language of *Duncan,* is all the more compelling.

 In the case at bar, Alloy claims that Chrysler abandoned its registered trade-marks because it failed to provide Alloy with proper specifications for the parts manufactured by Alloy or to monitor the quality of the parts. *See* Alloy's Answer at 8–10, 12. Thus, Alloy has challenged the Chrysler's marks based on facts which arose during the course of the licensing arrangement. Moreover, Alloy was only entitled to use the marks in connection with products it sold back to Chrysler. As a result, Alloy is not entitled to raise the defense of abandonment. Chrysler's motion to strike is granted.

### III. *Conclusion*

Plaintiff's motion to strike defendant's defense of abandonment is granted.