**BUNN–O–MATIC CORPORATION,**
Plaintiff/Counter Defendant,

v.

**BUNN COFFEE SERVICE, INC.,**
Defendant/Counter Plaintiff.

No. 97–3259.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 10, 2000.

Richard Bushnell, Grant H. Peters, Thomas J. Donovan, Thomas B. Quinn, Trexler Bushnell Giangiorgi & Blackstone, Ltd., Chicago, IL, for plaintiff.

Marc Durant, Rita Durant, Durant & Durant, Philadelphia, PA, for defendant.

## ORDER

SCOTT, District Judge.

This matter comes before the Court on four summary judgment motions. Plaintiff Bunn–O–Matic Corporation (Bunn–IL) moves for partial summary judgment to find Defendant Bunn Coffee Service, Inc. (Bunn–NY), liable for breach of contract, trademark infringement, unfair competition, and trademark dilution. Bunn–NY moves for summary judgment: (1) to find that the Court lacks personal jurisdiction over it; (2) to find that its defenses of acquiescence and laches bar Bunn–IL's claim; and (3) to find that Bunn–IL is not entitled to an accounting of profits, compensatory damages or punitive damages.

Bunn–NY's motion for summary judgment for lack of personal jurisdiction is DENIED. The Court has personal jurisdiction because Bunn–NY's alleged tortious conduct had an impact on Bunn–IL in Illinois. *Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir.1997). Bunn–IL's motion for summary judgment is ALLOWED in part. The Court finds that no issues of fact exist regarding Bunn–IL's claims of breach of contract, trademark infringement and unfair competition. Issues of fact, however, remain regarding Bunn–IL's dilution claim. That portion of Bunn–IL's summary judgment motion is denied.

Bunn–NY's motion for summary judgment on the issues of compensatory damages and punitive damages is ALLOWED in part. Bunn–IL concedes it is not seeking compensatory damages, and is not seeking punitive damages in its breach of contract and unfair competition claims; thus, judgment is appropriate on those issues in these claims. Enhanced damages remain possible, however, in the trademark infringement and dilution claims. Bunn–NY's remaining motion for summary judgment is DENIED. Bunn–NY cannot establish that Bunn–IL abandoned its trademarks. Bunn–NY's defenses of laches or acquiescence cannot prevent injunctive relief because it intentionally infringed on Bunn–IL's trademarks. Laches and acquiescence will not bar injunctive relief against an intentional infringer. Bunn–IL's delay in asserting its rights, however, creates issues of fact regarding whether Bunn–NY's laches or acquiescence defense may bar monetary relief. Bunn–NY's intentional infringement also precludes its request for summary judgments on the issue of accounting of profits.

### UNCONTESTED FACTS

Bunn–IL makes and sells coffee makers and related equipment; it was formed in 1957. Bunn is the name of the family that started the business. Bunn–IL's twelve federally registered trademarks include BUNN–O–MATIC and several different forms of the name BUNN. Six of these registered marks have been in use for more than 5 years and are incontestable. 15 U.S.C. § 1065. Bunn–IL sells its equipment throughout the United States and internationally. Bunn–IL sells to virtually every potential market for this type of equipment from restaurants, to institutional operations, to individual consumers. Bunn–IL also has a web site, *www.bunnomatic.com.*

Bunn–NY began operation in the New York metropolitan area in 1972. Bunn–NY provides coffee service and related refreshment service to offices, banks, retail shops and a few delis. Bunn–NY provides coffee, creamer, sweetener, tea, soda, snacks, cups, napkins, and other related products. Coffee service accounts for a substantial portion of Bunn–NY's business.

In connection with the coffee service, Bunn–NY provides customers with coffee making equipment and related equipment under the terms of written loan agreements. Some of the equipment is manufactured by Bunn–IL; some is manufactured by Bunn–IL's direct competitors.

Before starting Bunn–NY, its two founders, Lowell Shindler and Steve Trapani, each owned coffee service businesses. Shindler owned Coffee Break Industries, Inc., and Trapani owned America Coffee Service. Shindler and Trapani gave several reasons for selecting the name Bunn Coffee Services, Inc., for the new business: Bunn was a recognized name; one of them thought he knew of a Bunn coffee service in Florida; and one of them remembered reading in a magazine that a coffee tree was once called a bunn tree.[1] The founders of Bunn–NY also knew of Bunn–IL because they owned Bunn–IL equipment. Coffee Break Industries, Inc., had established a credit account with Bunn–IL.

From its inception in 1972, Bunn–NY used the Bunn Coffee Service, Inc. name in its business dealing with suppliers, except for its dealings with Bunn–IL. Bunn–NY continued to maintain its account with Bunn–IL under the Coffee Break Industries, Inc., name. The founders stated that they used the Coffee Break Industries, Inc., name because a Bunn–IL sales representative told them that if they used the BUNN name, Bunn–IL would "bury you". Coffee Break Industries, Inc., also had credit established with Bunn–IL, and Shindler and Trapani thought reestablishing credit under a new name would be difficult. Bunn–NY, however, paid Bunn–IL with Bunn Coffee Service, Inc. checks beginning in 1973.

In addition to its corporate name, Bunn–NY has used several different phrases and trademarks that included the BUNN name, including BUNN COFFEE SERVICE, BUNN WE BRIGHTEN YOUR DAY, BUNN–1 YOUR OFFICE SUPERMARKET and BUNN–1 AMERICA'S REFRESHMENT MANAGEMENT SERVICE. In almost every case, the BUNN or BUNN–1 portion of each of the marks was much larger and bolder than the other words in the mark, and was the single, dominant feature of each mark. Bunn–NY also used the terms BUNN and BUNN–1 as shorthand for its other marks.

Coffee making equipment is integral to Bunn–NY's business. By loaning the equipment, Bunn–NY ensures that the customer buys its coffee and supplies from them. Bunn–NY places prominently on each piece of equipment a sticker that says BUNN or BUNN–1 in large print. Bunn–NY employees have sometimes been instructed to place stickers over the name of the manufacturer of the machine. The stickers are advertising for Bunn–NY. The stickers also identify the equipment as belonging to Bunn–NY. Ownership of equipment can become an issue if customers' assets are sold, either voluntarily or involuntarily, of if equipment is destroyed or damaged at customer locations.

Bunn–NY has grown significantly during its years of operation. Much of this growth came through acquiring other coffee service companies. Most of its acquisitions have been integrated into Bunn Coffee Service, Inc., and operate under that name. One acquisition, Dell Coffee Service, however, still operates under the Dell name. Dell accounts for 30% to 40% of Bunn–NY's current sales. Even with this growth, Bunn–NY remained almost exclusively focused on the New York area.

Bunn–IL executives became aware of Bunn–NY no later than February, 1980. At that time, attorney George R. Bunn, Jr. gave Bunn–IL legal advice concerning whether to take legal action against Bunn–NY for its use of the BUNN name. Bunn–IL, however, took no action until

---

1. Bunn–NY submitted as evidence that the word coffee came an Arabic term for wine, *qahway,* and a similar Turkish term for a drink, *kahveh.* The berry from which the predecessor drink was made was called bunn. *Ukers' International Tea & Coffee Buyers' Guide* at 14 (28th ed.1978–79).

1988. Attorney Bunn sent Bunn–NY a letter dated June 27, 1988. The letter asked Bunn–NY either to stop using the BUNN name or to enter into an appropriate arrangement with Bunn–IL. The letter stated that Bunn–IL would consider a license arrangement.

The parties' counsel discussed the issue for over a year. While in the midst of the negotiations, Bunn–NY, in June, 1989, registered the name BUNN–1 YOUR OFFICE SUPERMARKET with the state of New York. In the registration, Bunn–NY stated that Bunn–NY was, "the owner of the mark and no other person has the right to use the mark in this state, either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive or be mistaken therefor".

The parties ultimately executed an agreement in November, 1989 (the Agreement). The Agreement was dated November 1, 1989. The operative paragraphs of the Agreement state:

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

1. BUNN–O–MATIC grants to BUNN COFFEE SERVICE the continued right to use the name BUNN COFFEE SERVICE in connection with its existing business throughout the various states it is presently engaged in, and such other additional states as it may, from time to time, expand to.

2. BUNN COFFEE SERVICE acknowledges that BUNN–O–MATIC owns all right, title and interest in and to the Marks set forth in Exhibit "A", and that it has and will acquire no ownership rights in any of said Marks by reason of this Agreement, or of its distribution of products and services, pursuant to this Agreement, or otherwise, and that all uses of the Marks will continue to enure to the benefit of BUNN–O–MATIC.

3. BUNN COFFEE SERVICE agrees to maintain the quality of normal commercial samples of all products and services sold and services by BUNN COFFEE SERVICE, in connection with the Marks. BUNN COFFEE SERVICE acknowledges that maintenance of quality standards in connection with the Marks is a material obligation of this Agreement.

4. This Agreement contains the understanding of the parties and cannot be amended by either party without the prior written consent of the court and shall be governed by and construed in accordance with the laws of the State of New York.

Exhibit A referenced in paragraph 2 states:

## TRADEMARKS

### BUNN–O–MATIC CORPORATION

| TRADEMARK | REGISTRATION NUMBER |
| --- | --- |
| Bunn Omatic | 694,904 |
| Bunn | 760,363 |
| Bunn Pour–Omatic | 776,610 |
| Bunn (for filters) | 788,495 |
| Bunn Convertible | 975,488 |
| Bunn & Sunburst Design | 1,056,542 |
| Bunn Omatic (tea machines, hot water, urns, warmers) | 1,292,770 |

After executing the Agreement, Bunn–NY continued to use its corporate name Bunn Coffee Service, Inc., and the names BUNN and BUNN–1 in various forms. Bunn–IL became aware of the continued use of BUNN and BUNN–1 in 1991. At that time, one of Bunn–NY's competitors, Perkaroma Coffee Service, complained to James E. Bunn, Vice Chairman of Bunn–IL, about Bunn–NY's use of the name BUNN. At this time Bunn–NY was also using a telephone number, 800–776–BUNN. Bunn–IL took no action when it received this information.

In late 1995, Bunn–NY began using a web site called *www.bunn.com*. Bunn–NY subsequently changed its web site name to *www.1stcoffee.com*. Under either name, the marketing information on the web site con-

tained prominent uses of marks dominated by the terms BUNN and BUNN–1.

On January 4, 1996, Bunn–IL sent Bunn–NY a letter stating that Bunn–IL considered Bunn–NY to be in breach of the Agreement and demanding that it cease acts of infringement. Bunn–NY did not cease its use of the marks containing BUNN and BUNN–1. The parties continued discussions until June 16, 1997, when Bunn–IL sent a letter stating that the Agreement was terminated. Bunn–IL then commenced this suit. After extensive discovery, the parties have now filed these four motions for summary judgment.

Bunn–IL presented uncontroverted evidence that customers have confused Bunn–NY with Bunn–IL. Bunn–IL customers have called Bunn–NY thinking that it was Bunn–IL. Bunn–NY has directed its staff to redirect such calls to Bunn–IL and has provided staff with Bunn–IL's Illinois telephone number. Similarly, in the past five years, Bunn–IL has received one to three calls per month from customers wanting Bunn–NY. Also, two of Bunn–IL customers and a representative of Bunn–IL's advertising company at different times mistook Bunn–NY's web site for Bunn–IL.

### ANALYSIS

At summary judgment, the movant must present evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has produced evidence showing that he is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. *Matsushita Elec. Ind. Co. Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 576, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Bunn–IL argues that the Agreement is a license which authorized Bunn–NY to use the name Bunn Coffee Service, Inc., only, and Bunn–NY breached that agreement by using the BUNN and BUNN–1 names. The unauthorized use, says Bunn–IL, constitutes infringement, unfair competition, and dilution of the mark. Bunn–IL claims it is entitled to partial summary judgment: (1) declaring that Bunn–NY breached the Agreement and that Bunn–IL is no longer bound by the Agreement, and (2) permanently enjoining Bunn–NY from using the BUNN name in any form.

Bunn–NY claims initially that this Court lacks personal jurisdiction over it. Even if the Court has jurisdiction, the Agreement, according to Bunn–NY, was a consent agreement between non-competing parties in separate markets that are equally entitled to use the name BUNN in each party's respective markets. The respective markets are: (1) coffee equipment manufacturing and sales, and (2) refreshment services, including coffee sales. Bunn–NY states that the Agreement acknowledged and delineated each party's use of the BUNN name in its market. Bunn–NY argues it may therefore continue to use its name in any manner it wishes within its market. Bunn–NY also argues that even if the Agreement was a license, no infringement occurred and Bunn–IL's claim is barred by acquiescence, laches, and abandonment. Bunn–NY also argues that Bunn–IL has no proof of injury and so is not entitled to compensatory damages or punitive damages. Bunn–NY also argues that Bunn–IL is not entitled to an accounting of profits.

### PERSONAL JURISDICTION

The Court has personal jurisdiction over Bunn–NY. Judge Mills of this Court decided this issue already by Order entered April 1, 1998. Bunn–NY argues that it is not simply seeking this Court's review of Judge Mills' decision. His ruling was on a motion to dismiss under Fed.R.Civ.P. 12(b)(2). This motion, Bunn–NY claims, is

a motion for summary judgment under Fed.R.Civ.P. 56. This Court, however, cannot render judgment unless it has jurisdiction over the parties. At best, this Court can dismiss for lack of jurisdiction. Thus, this motion cannot be a request for judgment, but only a renewal of the prior motion to dismiss. This Court must follow Judge Mills' decision unless new information convinces the Court that an error has occurred, other than the application of the law to the facts. *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir.1993). This Court has no such conviction.

■ Bunn–IL has the burden to establish personal jurisdiction. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir.1986). Bunn–IL must establish by a preponderance of the evidence that personal jurisdiction exists. Bunn–IL has met its burden.

■ A tortfeasor who commits a tort against an Illinois business so that the injury is felt in Illinois, submits himself to the jurisdiction of the Illinois courts. *Janmark Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir.1997); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 411 (7th Cir.1994).[2] Trademark infringement and unfair competition are torts. *Colts*, 34 F.3d at 411. Bunn–IL is an Illinois resident with its principal place of business in Illinois. Judge Mills concluded in his April 1, 1998, Order that Bunn–IL felt the impact of Bunn–NY's tortious conduct at its principal offices in Illinois. April 1, 1998, Order at 5. Bunn–NY has presented no new evidence that warrants a change in that conclusion. *Williams*, 1 F.3d at 503. The Court has personal jurisdiction over the tortfeasor Bunn–NY.

Bunn–NY argues that Bunn–IL felt no injury because it has no evidence of compensatory damages. Continuing infringement of Bunn–IL's trademark, alone, sufficiently injures Bunn–IL to entitle it to injunctive relief. *International Kennel Club of Chicago v. Mighty Star, Inc.*, 846 F.2d 1079, 1091 (7th Cir.1988). *See* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 30:2 (4th ed.1997–1999)(hereinafter McCarthy). Bunn–NY thus caused an injury in Illinois for which Bunn–IL is entitled to equitable remedies. Bunn–IL may hail Bunn–NY into Illinois courts because Bunn–NY caused the injury in Illinois. *Janmark, Inc.* This Court, therefore, has personal jurisdiction over Bunn–NY.

Bunn–NY asks the Court to reject the Seventh Circuit's holding in *Janmark* and follow the Third Circuit's decision in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir.1998).[3] This Court cannot entertain Bunn–NY's suggestion. The Seventh Circuit decisions are binding on this Court. This Court has personal jurisdiction over Bunn–NY in this case. The motion by Bunn–NY for summary judgment claiming this Court lacks personal jurisdiction over it is denied.

### BREACH OF CONTRACT

■ The remaining motions turn primarily on whether the Agreement is a license. The Agreement is a contract governed by New York law. Under New York law, the unambiguous terms of the Agreement control. *Nancy Neale Enterprises, Inc. v. Eventful Enterprises, Inc.*, 260 A.D.2d 453, 688 N.Y.S.2d 207, 208 (1999). Paragraph 4 of the Agreement states that the Agreement, "contains the understanding of the parties". New York law gives especially great weight to such clauses as indicia of the parties intent to be governed by the written terms of the Agreement alone. *See Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738, n. 3 (2d Cir.1975).

■ The Agreement is clear in its terms and is a license. A trademark license is a

---

**2.** Illinois long arm jurisdiction extends to the limit allowed by the United States Constitution. *Janmark*, 132 F.3d at 1202.

**3.** The Third Circuit states that the First, Fourth, Eighth, Ninth and Tenth Circuits do not agree with the *Janmark* decision. 155 F.3d at 265.

grant of permission to use the grantor's trademark. 2 McCarthy §§ 18:42–18:43. The Agreement states, "[Bunn–IL] grants to [Bunn–NY] the continued right to use the name BUNN COFFEE SERVICE in connection with its existing business..." The Agreement further states that Bunn–IL owns its registered BUNN trademarks and that Bunn–NY gains no ownership by reason of the Agreement. The Agreement also states that, "all uses of the Marks will continue to enure to the benefit of [Bunn–IL]." Finally, the Agreement obligates Bunn–NY to maintain the quality of its goods and services and that maintenance of quality standards "is a material obligation of this Agreement." These terms constitute the essential terms of a trademark license. *See* 2 McCarthy § 18:43.

Bunn–NY argues that the 1989 Agreement is not a license because: (1) it does not contain the word license, (2) it does not call for the payment of royalties, (3) it does not establish a quality control mechanism, (4) it has no termination date, and (5) it contemplates no affiliation or joint activity of the two enterprises. Bunn–NY claims that the resulting document is a consent agreement between entities in separate markets that use a similar mark. The purpose of the Agreement, according to Bunn–NY, is to define the scope of each party's use of the marks so each may know the market in which he may use the mark.

The Court disagrees with Bunn–NY's interpretation of the Agreement. First, the prior drafts are irrelevant when the intent of the parties is clear from the four corners of the document. *Nancy Neale Enterprises, Inc. v. Eventful Enterprises, Inc.*, 260 A.D.2d 453, 688 N.Y.S.2d 207, 208 (1999). Second, none of the omitted terms identified by Bunn–NY are necessary to create a valid trademark license; they are unrelated to either the grant of a limited right to use the mark or the obligation to maintain quality standards. *See Univ. Book Store v. Univ. of Wisc. Bd. of Regents*, 33 U.S.P.Q.2d 1385, 1401–02, 1994 WL 747886 (TTAB 1994)(royalty-free license); *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir.1997)(formal quality control mechanism not necessary for a license); *Dial–A–Mattress Operating Corp. v. Mattress Madness, Inc.*, 847 F.Supp. 18, 19 (E.D.N.Y.1994)(license with indefinite term may be terminated at will with reasonable notice); *Digital Equipment Corp. v. AltaVista Tech., Inc.*, 960 F.Supp. 456, 475–76 (D.Mass.1997)(valid license between unaffiliated parties). The Agreement is the grant of a right to use another's trademark, an interest appurtenant to its business operations; therefore, it is a license.

Finally, Bunn–NY's interpretation of the Agreement bears no relation to the words of the Agreement. The Agreement does not treat the parties as equal owners of the BUNN name; the Agreement says Bunn–IL owns the listed marks, which include the word BUNN. The Agreement does not say that each party may benefit from the use of the BUNN mark in its respective market; the Agreement says that *all* uses of the marks enure to the benefit of Bunn–IL. The Agreement does not delineate the use of the BUNN name in these differing markets; Bunn–IL grants Bunn–NY the right to use the name BUNN COFFEE SERVICE. The Agreement does not say each party may use the name in any manner it wishes; the Agreement obligates Bunn–NY to Bunn–IL to maintain the quality of its goods and services on which it places the BUNN name. The Agreement clearly is a license.

■ Bunn–NY's continued use of the names BUNN and BUNN–1 after signing the Agreement constitutes breach of contract. The license granted Bunn–NY the right to use the name BUNN COFFEE SERVICE. Bunn–NY used the BUNN name in other manners. Such use is not authorized and constitutes a breach of the license. *Digital Equipment Corp. v. AltaVista Tech. Inc.*, 960 F.Supp. at 475. Bunn–NY argues that the license is silent on the use of BUNN or BUNN–1. This is no answer. The license is a limited grant of authority to use the trademark in a defined way. Another use is not autho-

rized by the grant and is a breach. *Id. See* 4 McCarthy on Trademarks § 25:30.

■ Bunn–NY also argues Bunn–IL cannot terminate the license because it is irrevocable. A license containing no time frame is generally terminable at will. *Dial–A–Mattress v. Mattress Madness, Inc.,* 847 F.Supp. 18, 19 (E.D.N.Y.1994). Bunn–NY cites *National Ass'n for the Advancement of Colored People v. NAACP Legal Defense & Educational Fund, Inc.,* 753 F.2d 131, 137 (D.C.Cir.1985), for the proposition that indefinite grants are irrevocable. The *NAACP* Court estopped the NAACP from terminating its license to the NAACP Legal Defense Fund because, among other reasons, NAACP never reserved any claim of right to the name. 753 F.2d at 139, 140 n. 85. Bunn–IL retained all of its marks in the Agreement. Furthermore, the NAACP Legal Defense Fund, unlike Bunn–NY, did not breach its license. Even if the license was irrevocable, once Bunn–NY's breached the license, Bunn–IL could terminate the Agreement. *See e.g., Rawcliffe v. Aguayo,* 108 Misc.2d 1027, 438 N.Y.S.2d 697, 698 (1981).

■ Bunn–NY also argues that Bunn–IL failed to prove a breach of contract claim because it has not proven any compensable damage arising from the breach. Even without damages, however, Bunn–IL would be entitled to declaratory relief to establish that it is no longer obligated to perform under the Agreement. *See* Restatement (Second) of Contracts § 345 comment d (1981). Bunn–IL has established Bunn–NY's breach of contract.

### *TRADEMARK INFRINGEMENT and UNFAIR COMPETITION*

■ The undisputed facts also establish that Bunn–NY committed trademark infringement and unfair competition. To prove trademark infringement, Bunn–IL must prove: (1) validity of the mark and (2) unauthorized use of the mark that is likely to cause confusion, mistake or deception. 15 U.S.C. §§ 1114, 1125(a); *Echo Travel, Inc. v. Travel Associates Inc.,* 870 F.2d 1264, 1266 (7th Cir.1989). Bunn–IL

unquestionably meets the first two elements: six of its registered BUNN marks are incontestable, and Bunn–NY used the BUNN mark without Bunn–IL's permission in violation of the Agreement. The only possible question is the likelihood of confusion.

■ The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license. *Burger King v. Mason,* 710 F.2d 1480, 1492–93 (11th Cir. 1983) and cases cited therein. Bunn–NY argues that the rule stated in these cases does not apply here. Bunn–NY says that in each such case, the licensee was either (1) a terminated franchisee or local chapter of an association that continued to represent to its customers that it was still a member of the franchise system or association, or (2) a distributor of the licensor's products or services that continued to represent to the public that it still was authorized to sell the licensor's products or services. In such cases, the licensee is wrongfully continuing to offer the licensor's product or services under the licensor's name. Bunn–NY was neither a franchisee nor a Bunn–IL distributor, and never offered the same products or services as Bunn–IL.

The Court declines Bunn–NY's invitation to differentiate between types of trademark licenses. Neither the *Burger King* case, nor the cases cited therein, limit the rule to only certain licensees, such as franchisees, distributors, or local chapters of associations. Bunn–NY further has cited no other authority holding that a terminated licensee may continue to use the licensor's mark.

Indeed, the Fifth Circuit has already held that a licensee that was not offering the same products or services of the licensor must still cease use of the trademark after the license ends. *Professional Golfers Ass'n v. Bankers Life & Casualty Co.,* 514 F.2d 665, 669–70 (5th Cir.1975)(hereinafter *PGA* ). In *PGA,* the defendant was licensed to use the "PGA"

trademark in connection with its golf course. The Fifth Circuit affirmed the District Court's order enjoining the golf course from using the PGA trademark once its license terminated.

The golf course was a not a direct competitor of the PGA; it did not attempt to create a rival professional golfers' association. The defendant was in a related market; it operated a golf course. The *PGA* Court still applied the general rule that once the license ends, "a licensee's right to the mark ends, and any subsequent use constitutes infringement." *Id., citing* 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies, at 470 (3d ed. 1069). *See* 4 McCarthy § 25:31("In sum, the law is simple. If, as a matter of contract law, a service mark or trademark license has ended, the licensee has no right to continue use of the mark. Any such use is without the trademark licensor's consent and constitutes infringement").

Like the golf course in *PGA*, Bunn–NY is not a direct competitor. Bunn–NY does not manufacture or sell coffee makers or other equipment. However, it loans coffee makers and related equipment to customers and provides coffee and other goods and services related to coffee makers. Like the golf course, its market is related to the licensor's. Like the *PGA* case, Bunn–NY's use of the mark may tend to confuse the public by creating the impression that an affiliation exists between Bunn–IL and Bunn–NY. Like the golf course, Bunn–NY's use of the name caused actual confusion. *Id.* Each company's customers regularly called the wrong company, and two of Bunn–IL's customers mistook Bunn–NY's web site as Bunn–IL's. Like the golf course, Bunn–NY's continued use after the termination of the license necessarily is likely to cause confusion and must cease.

■ Beyond this, Bunn–NY's argument would create two classes of trademark licenses—one for directly competing product markets, which clearly limits the licensee's use of the mark to the terms of the license; and a second class for non-competing, related markets, which may somehow give the licensee rights to use the mark beyond the rights granted in the license. This cannot be. A trademark license is the limited grant of a right to use another's property interest and is limited to the grant in the license. *Digital Equipment,* 960 F.Supp. at 475; 4 McCarthy § 25:30. Bunn–NY cannot use its breach of the Agreement to gain a right to use the BUNN mark in a manner not authorized by the Agreement.

■ Bunn–NY's distinction also hearkens back to the rejected theory of limiting trademark infringement and unfair competition only to palming off identical products. *See* 4 McCarthy § 24:4. Modern trademark law grants protection against any infringing activity that has a likelihood to confuse, not just palming off. *See PGA,* 514 F.2d at 669–70; 4 McCarthy §§ 24:1–24:3.

■ Bunn–NY also argues that its right to the name BUNN comes not from the license, but from its use prior to the execution of the Agreement. However, Bunn–NY lost any independent claim of right to the name when it signed the license. A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when he accepts his position as licensee, thereby acknowledging the licensor owns the marks and that his rights are derived from the licensor and enure to the benefit of the licensor. *Nat'l Council of Young Men's Christian Association v. Flint Y.M.C.A.,* 229 U.S.P.Q. 32, 35–36, 1985 WL 72673 (E.D.Mich.1985). This legal principle (like far too many others) is called merger. See 2 McCarthy § 18:47.

Bunn–NY accepted the position of licensee in the Agreement and acknowledged Bunn–IL's superior rights. Bunn–NY accepted a grant of the right from Bunn–IL to use the name BUNN COFFEE SERVICE. Bunn–NY acknowledged that Bunn–IL owned the marks. Bunn–NY further agreed that all subsequent uses of

the marks enured to the benefit of Bunn–IL. Bunn–NY gave up any independent claim of right to the BUNN marks. Its rights to use the BUNN name came only from the license. It breached the license and so lost its right to use the name.

Bunn–NY argues that it only acknowledged Bunn–IL's ownership of the registered marks in the markets in which the marks are registered. Bunn–NY focuses on the phrase in paragraph 2 of the Agreement that says, "[Bunn–NY] acknowledges that [Bunn–IL] owns all right title and interest in and to the Marks set forth in Exhibit 'A'...." Exhibit A lists Bunn–IL's then registered marks along with the trademark registration numbers. Those registrations define the market to which the ownership of the mark extends, and none of the registrations identify the coffee service business as one of the markets in which Bunn–IL registered its mark. According to Bunn–NY therefore, it did not give up any claim of right to the BUNN name by signing the Agreement; rather, it only acknowledged that Bunn–IL owned those marks in the markets listed in the registrations.

Bunn–NY's interpretation of quoted language from Paragraph 2 of the Agreement is inconsistent with the rest of Paragraph 2 and the rest of the Agreement. First, Bunn–NY accepted the grant from Bunn–IL of the right to use the name BUNN COFFEE SERVICE. Bunn–NY thus accepted a grant of right to the BUNN name from Bunn–IL. At a minimum, Bunn–NY thereby acknowledged Bunn–IL's authority to grant to it the use of the BUNN name. Second, and more importantly, Bunn–NY agreed in Paragraph 2, "that *all* uses of the Marks will continue to enure to the benefit of [Bunn–IL]"(emphasis added). Bunn–NY did not agree that the uses of the marks *in the registered markets* enure to Bunn–IL's benefit; Bunn–NY agreed that *all* uses enure to Bunn–IL's benefit. Bunn–NY clearly acknowledged Bunn–IL's superior right to the BUNN name and accepted the limited grant of the license to use BUNN COFFEE SERVICE.

Bunn–NY also argues that the cases that apply the "merger" doctrine are distinguishable from this case because they involve franchisees, distributorships, or local chapters of national associations. Bunn–NY is again inviting the Court to recognize two types of trademark licenses, one for identical products and services and one for related, non-competing products and services. The Court again declines the invitation for all the reasons previously stated.

By agreeing to the license in the Agreement, Bunn–NY relinquished any independent claim of right to the use of the name BUNN; all uses enured to Bunn–IL's benefit. Bunn–NY's right to the BUNN name came solely from the Agreement. Bunn–NY's right to use the BUNN name ended when the license ended. No issues of fact exist. Bunn–IL has established all of the elements of trademark infringement.

■ Proof of trademark infringement constitutes unfair competition under both Illinois and New York law. *Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*, 4 F.Supp.2d 794, 799 (C.D.Ill.1998)(proof of infringement constitutes unfair competition); *Adirondack Appliance Repair, Inc. v. Adirondack Appliance Parts, Inc.*, 148 A.D.2d 796, 538 N.Y.S.2d 118 (1989)(infringement or unfair competition both require proof of likelihood of confusion, but infringement also requires proof that the mark has secondary meaning). Thus, the undisputed facts establish Bunn–NY committed unfair competition.

### TRADEMARK DILUTION

■ Issues of fact, however, remain regarding Bunn–IL's claim of trademark dilution. Bunn–NY claims as an initial matter that the 1996 federal antidilution statute does not apply to this case because its alleged diluting conduct predated the statute. The Court agrees with those courts that have held that the statute can be applied to redress diluting activities that occurred after the statute's effective date. *See Viacom Inc. v. Ingram Enter.*,

*Inc.,* 141 F.3d 886, 888 (8th Cir.1998). Bunn–NY's conduct after the 1996 effective date is thus subject to the Act. Even so, however, issues of fact remain regarding Bunn–IL's claim.

 To establish a dilution claim, Bunn–IL must show: (1) its marks are famous; (2) Bunn–NY is making use of its marks in commerce; (3) Bunn–NY's use began after the marks became famous; and (4) Bunn–NY's use of the marks dilute the quality of the marks by diminishing the capacity of the marks to identify and distinguish goods and services. 15 U.S.C. § 1125(c); *Pirelli Armstrong Tire Corp. v. Titan Tire Corp.,* 4 F.Supp.2d 794, 802 (C.D.Ill.1998). The evidence in the record does not establish whether Bunn–IL's mark is famous. Famous means that a name is so well known that its trademark's significance is apparent even when used outside its own market. See 4 McCarthy §§ 24.92–24:92.2; Restatement (Third) of Unfair Competition § 25, comment e (1995). The evidence submitted does not clearly establish that level of notoriety. In particular, the BUNN name is used in other markets, such as Bunn Logging, Bunn Communications, Inc., and Bunn Heating and Air Conditioning.

The existence of the use of the name in other markets does not preclude the possibility that Bunn–IL can prove the fame of its marks. At summary judgment, however, the Court must look at the facts in the light most favorable to the non-moving party. Read in that light, the existence of uses of the name in other markets creates an issue of fact to be decided at trial.

### LACHES, ACQUIESCENCE, and ABANDONMENT

 Bunn–NY's motions for summary judgment ask the Court to find that even if Bunn–IL establishes breach of contract, trademark infringement or unfair competition, Bunn–IL's claims are still barred by the doctrines of laches, acquiescence, and abandonment. However, Bunn–NY cannot use the defenses of acquiescence and laches to bar injunctive relief because it

intentionally infringed on Bunn–IL's trademarks. These defenses may be raised against Bunn–IL's monetary claims, but issues of fact as to those defenses preclude summary judgment at this time. Bunn–NY, as a licensee, is effectively estopped from raising its abandonment defense.

 To establish acquiescence, Bunn–NY must show that Bunn–IL by word or deed conveyed its implied consent to Bunn–NY's use of the BUNN mark. *TMT North Am., Inc. v. Magic Touch GmbH,* 124 F.3d 876, 885 (7th Cir.1997). Laches does not require proof of intent. To prove laches, Bunn–NY must show (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 820 (7th Cir.1999).

Bunn–NY claims that its unrestricted use of the BUNN name since 1972, combined with the lax attitude of Bunn–IL, demonstrate its right to both of these defenses. Bunn–IL sales personnel knew that Bunn–NY used the BUNN name from it inception. Bunn–IL's lawyer advised Bunn–IL on Bunn–NY's use of the BUNN mark in 1980, but Bunn–IL did nothing until 1988. After executing the Agreement, Bunn–IL then learned of Bunn–NY's continued use of the BUNN and BUNN–1 marks in 1991 and did nothing until 1996. In the interim, Bunn–NY continued to invest in the BUNN name, lulled by Bunn–IL's laxity into a reasonable reliance that its actions were proper both before and after the Agreement. Further, Bunn–NY claims that the delay has resulted in the loss of evidence and the dimming of memories vital to Bunn–NY's defense.

Bunn–NY cannot raise these defenses to challenge Bunn–IL's request for injunctive relief, however, because it intentionally infringed on Bunn–IL's trademarks, at least after it executed the Agreement. *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 614 (7th Cir.1965). Shindler's and Trapani's reasons for using the

BUNN name initially may be subject to some dispute. They gave several reasons for picking the name BUNN that are independent of their knowledge of Bunn–IL. But, their subsequent actions demonstrate an intent to infringe on Bunn–IL's name.

Shindler and Trapani, for example, consciously hid the Bunn Coffee Service, Inc., name from Bunn–IL. Bunn–NY argues that a Bunn–IL sales representative knew of the Bunn Coffee Service name and told them not to use it in its dealing with Bunn–IL. The sales representative's knowledge may or may not be imputed to Bunn–IL, but Bunn–NY's decision to follow the advice indicates an intent to hide the use of the BUNN name from Bunn–IL corporate officials. The intent to deceive Bunn–IL regarding its use of the name calls into question Bunn–NY's ability to come to equity with clean hands.

Bunn–NY's actions after it executed the Agreement, however, demonstrate its intent to infringe on Bunn–IL's trademark. Bunn–NY agreed in writing that: (1) Bunn–IL granted it the right to use the name Bunn Coffee Service, Inc., (2) Bunn–IL owned the BUNN marks, and (3) all uses of the BUNN marks enured to the benefit of Bunn–IL. Bunn–NY immediately disregarded its acknowledgment of Bunn–IL's ownership rights and continued using Bunn–IL's marks in manners that exceeded the terms of the license. Such disregard for Bunn–IL's acknowledged ownership rights in the BUNN mark and for its legally binding, contractual obligations demonstrates intentional infringement. *See Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 603 (6th Cir.1991)(knowledge of another's prior use of the mark supports an inference of intentional infringement); 3 McCarthy § 23:115. Bunn–NY's intentional infringement precludes Bunn–NY from raising laches or acquiescence as a defense to Bunn–IL's request for injunctive relief. *Tisch Hotels, Inc.*, 350 F.2d at 614.

Laches or acquiescence, however, may still bar monetary relief. The Court must weigh the equities of the situation to determine whether Bunn–IL's delay should preclude monetary relief. 15 U.S.C. § 1125(c); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d at 822; *James Burrough, Ltd. v. Sign of the Beefeater*, 572 F.2d 574, 578 (7th Cir.1978). Deliberate infringement is a factor to be considered in weighing the equities, but so is Bunn–IL's delay. *See Hot Wax, Inc.*, 191 F.3d at 826 (unclean hands may bar laches defense to damages); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir.1989)(factors to weigh in applying the laches defense: the strength of plaintiff's trademark; plaintiff's diligence in enforcing the mark; the harm to plaintiff if relief is denied; whether defendant acted in good faith ignorance of plaintiff's rights; competition between the parties; and the harm suffered by defendant because of plaintiff's delay).

Bunn–IL learned of Bunn–NY's violation of the Agreement and infringement in 1991, but waited until 1996 to respond. The balance of the equities may weigh against awarding Bunn–IL any recovery for the period that it knowingly sat on its rights. *James Burrough, Ltd. v. Sign of the Beefeater*, 572 F.2d 574, 578 (7th Cir. 1978). The failure to act may bar all recovery. *See* Restatement (Third) Unfair Competition, § 31, comment d (1995); *Hot Wax, Inc.*, 191 F.3d at 822–23 (delay precluded all recovery). Bunn–IL explains that Bunn–NY's creation of the infringing web site in late 1995 constituted progressive encroachment that justified acting at that time. The reasonableness of Bunn–IL's decision to wait is an issue of fact to be decided at trial.

On the other hand, Bunn–NY's deliberate infringement may ultimately preclude it from avoiding some or all monetary liability. *Hot Wax, Inc.*, 191 F.3d at 825 (actual fraud by the defendant would bar laches defense). Bunn–NY knew that Bunn–IL owned the marks and that all uses of the BUNN marks enured to the benefit of Bunn–IL. How the Court should

weigh the equities turns on factual issues that must be left for trial.

 Bunn–NY also cannot prevail on the abandonment defense [4] because licensees are estopped from raising any events prior to the termination of the license to challenge the validity of the licensor's trademarks. *PGA*, 514 F.2d at 671; *Chrysler Motors Corp. v. Alloy Automotive Co., Inc.*, 661 F.Supp. 191, 193, (N.D.Ill.1987). The Court recognizes that the Seventh Circuit has once stated that licensees are not estopped once the license is terminated. *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d 655, 658 (7th Cir.1965). The Court however agrees with the *Chrysler Motors* Court that that statement is dicta, and that the decision in *Duncan, Inc.*, turned on the fact that the license agreement in that case was void from the inception because of a mutual mistake. 661 F.Supp. at 193. There was no estoppel in that case because the license never existed, not because the license was terminated.

Bunn–NY argues that Bunn–IL abandoned its trade mark because it did nothing to insure the quality of Bunn–NY's products and services offered under the trademark during the term of the license. Bunn–NY cannot use Bunn–IL's actions during the term of the license to prove abandonment.[5] It can only use Bunn–IL's actions subsequent to termination to prove abandonment. *Id.* Bunn–NY has presented no evidence that Bunn–IL did anything after the termination of the license that indicates an abandonment. Summary judgment on this defense is also denied.

## ACCOUNTING OF PROFITS and ENHANCED DAMAGES

 Intentional infringement may be a basis for seeking both an accounting of profits and enhanced damages in trademark infringement and dilution. 15 U.S.C. § 1117(a); *Web Printing Controls, Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir.1990); *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994); 3 McCarthy, §§ 23:112 & 30:97. The defenses of laches and acquiescence may ultimately affect the amount recoverable. Restatement (Third) of Unfair Competition, § 31. Summary judgment, therefore, on this issue is not possible at this time.

THEREFORE, Defendant Bunn Coffee Service, Inc.'s Motions: (1) for Summary Judgment for Lack of Personal Jurisdiction (d/e 81) is DENIED; (2) for summary judgment on its defenses of Acquiescence, Laches, and an Accounting of Profits (d/e 85) is DENIED; and (3) for summary judgment on Bunn–O–Matic's Claims for Actual and Punitive Damages (d/e 70) is ALLOWED ·in part. Partial summary judgment is granted in favor of Bunn Coffee Service, Inc. and against Bunn–O–Matic Corporation on any claims of compensa-

---

4. Bunn–IL correctly notes that Bunn–NY has not pled abandonment as an affirmative defense. Bunn–NY could seek leave to amend the pleadings, however. Fed.R.Civ.P. 15(a). The Court will therefore address the issue.

5. Furthermore, Bunn–NY's evidence of Bunn–IL's actions during the term of the license does not establish abandonment. Bunn–NY argues that Bunn–IL issued a naked license, meaning that it licensed the mark to Bunn–NY without any control over the quality of the products and services offered by Bunn–NY. A party that issues a naked license abandons its marks and loses all rights to the marks. *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir.1997). The Seventh Circuit has adopted Restatement (Third) of Unfair Competition § 33 approach to this issue. *Id.* The approach is a flexible one that allows the licensor to rely on the reputation of the licensee to insure the quality of the goods and services offered. "Absent a significant deviation from the licensor's quality standards, a licensor does not forfeit its trademark rights through licensing agreements." *Id.* at 886. *See Univ. Book Store v. Univ. Wisc. Bd. of Regents*, 33 U.S.P.Q.2d 1385, 1401–02 (TTAB 1994); 2 McCarthy § 18:55. Bunn–NY has presented no evidence that its products or services were ever inferior or that Bunn–IL could not reasonably rely on it to insure quality. Thus, even if it were not estopped from presenting evidence of Bunn–IL's actions during the term of the license, the evidence presented does not establish abandonment.

tory damages, and its claims for punitive damages in the breach of contract and unfair competition counts. The remainder of the Motion (d/e 70) is DENIED. Bunn–O–Matic Corporation's Motion for Summary Judgment on Breach of Contract, Trademark Infringement, Unfair Competition, and Trademark Dilution (d/e 68) is ALLOWED in part. Partial summary judgment is granted in favor of Bunn–O–Matic Corporation and against Bunn Coffee Service, Inc., on its claims for declaratory and injunctive relief for Bunn Coffee Service, Inc.'s breach of contract, trademark infringement, and unfair competition. The Court declares that Bunn Coffee Service, Inc., breached the Agreement and Bunn–O–Matic Corp. properly terminated the Agreement. The Court also permanently enjoins Bunn Coffee Service, Inc.'s continued use of the BUNN name as set forth below. Bunn–NY may still raise laches and acquiescence defenses to challenge the claims for monetary relief under these counts. Summary judgment is DENIED on Bunn–O–Matic Corporation's trademark dilution claim.

The Court hereby enters a permanent injunction enjoining Bunn Coffee Service, Inc. from using the term BUNN in any form or variation, and in any medium, in connection with its business operations, or claiming any ownership interest in the name or trademark containing the term BUNN or any variant of that term; except that, the BUNN name may continue to appear on equipment manufactured by Bunn–O–Matic Corporation (Bunn–O–Matic Equipment) which Bunn Coffee Service, Inc., owns or operates; provided however, that the term BUNN, or any variant, that may appear on Bunn–O–Matic Equipment shall only be the mark or marks placed on the Bunn–O–Matic Equipment by Bunn–O–Matic Corporation and not by Bunn Coffee Service, Inc. This injunction necessarily precludes Bunn Coffee Service, Inc., from continuing to use the name Bunn in its corporate name. Pursuant to 15 U.S.C. § 1116(a), Bunn Coffee Service, Inc., shall file with the Court and serve on Bunn–O–Matic Corporation, within thirty days after the service of this injunction order, a report in writing under oath setting forth in detail the manner and form in which Bunn Coffee Service, Inc., has complied with the injunction.

Bunn Coffee Service, Inc., is entitled to appeal the granting of an injunction immediately. 28 U.S.C. § 1292(a)(1). The Clerk is therefore instructed to enter a Fed.R.Civ.P. 58 judgment in favor of Bunn–O–Matic Corporation and against Bunn Coffee Service, Inc., for the relief set forth in this Order.

IT IS THEREFORE SO ORDERED.