THIS DISPOSITION IS
CITABLE PRECEDENT OF
THE TTAB

Hearing:
Feb. 8, 2002

Mailed:   June 18, 2002
Paper No. 25
csl

# UNITED STATES PATENT AND TRADEMARK OFFICE

---

## Trademark Trial and Appeal Board

---

Arleen Freeman
v.
National Association of Realtors

---

Cancellation No. 27,885
against Registration No. 519,789,
registered January 10, 1950; and
Cancellation No. 28,047
against Registration No. 515,200,
registered on Sept. 13, 1949

---

David Barry of Barry & Associates for Arleen Freeman.

Jeffrey A. Handelman of Brinks Hofer Gilson & Leone for National Association of Realtors.

---

Before Simms, Quinn and Wendel, Administrative Trademark Judges:

Opinion by Simms:

In these consolidated proceedings, Arleen Freeman (petitioner) seeks cancellation of two collective membership mark registrations held by National Association of Realtors (NAR or respondent), an Illinois corporation.

Canc. Nos. 27,805 and 28,047

These registrations are for the marks REALTOR (Registration No. 519,789, issued January 10, 1950, renewed) and REALTORS (Registration No. 515,200, issued September 13, 1949, renewed). In the registrations respondent indicated that it was exercising legitimate control over use of the marks for the following services:

> brokerage of real estate, industrial brokerage, farm brokerage, mortgage brokerage, in the appraisal of real estate, management of real estate, in the building of structures on real estate, in the subdivision of real estate properties, and in community planning for the development of raw land and slum clearance areas.

For the sake of convenience, we shall refer to both of these marks as the "Realtor" marks, with an initial capital letter "R".

Pursuant to stipulation, the parties agreed that the evidence submitted in connection with petitioner's motion for summary judgment and respondent's response could be treated as the final record in this case and that the briefs filed in connection with this motion could be treated as the final briefs in this case. An oral hearing was held at the facilities of the Practising Law Institute in San Francisco.

In her petitions for cancellation, petitioner asserts that she is a real estate broker licensed under California

2

law, doing business under the trade name Freeman Realty.
She asserts that respondent's registered marks are generic
because, in common usage, these words refer to and are
synonymous with real estate agents. Petitioner alleges
that:

> For many years prior to and through
> 1996, petitioner paid dues to NAR and
> was a member of NAR. Such dues were
> $64 in 1996. Petitioner would not have
> paid such dues, or joined NAR, had the
> realtor registration not existed.
> Petitioner was damaged by the payment
> of such dues, caused in substantial
> part by the registration of the realtor
> mark.

Petitioner asserts that she is not now a member of
respondent but that she competes with respondent's members
in San Diego County. Petitioner would like to call herself
a Realtor (or "realtor") because buyers and sellers she has
dealt with and continues to deal with allegedly use
"Realtor" as a generic word meaning realty agent, and
because "in common parlance" this word is "the most
descriptive" or most correct for her occupation.
Petitioner asserts in her pleading that the people with
whom she comes into contact repeatedly refer to her as a
"Realtor"; that petitioner has repeatedly had to correct
them and explain that this term is a mark owned by
respondent to mean a realty agent who is a member of

3

respondent; that she is not a member of NAR and, therefore, not a "Realtor," but that she is fully licensed under the law to assist them in real estate matters. She alleges that, even after this explanation is given, people remain confused as to her status. "Real estate agent" is not as succinct or as successful in conveying to people what she does, petitioner alleges. "Rather than put up with the confusion," petitioner asserts that about 500,000 real estate agents in this country have joined NAR, and that those agents would not have joined respondent if "Realtor" had not been a registered mark.

In its answer respondent denies the essential allegations of the petitions except that it admits that real estate agents who are members of respondent are authorized to use the mark "Realtor" in accordance with specified terms and conditions, and that not all real estate agents are members of respondent. Respondent also admits that, while petitioner is not currently a member, petitioner was for many years a member of an association affiliated with respondent. As an affirmative defense, respondent asserts that, because petitioner was a member of respondent (or its affiliated associations) for many years and was authorized as a licensee to use the mark "Realtor," petitioner is precluded by the doctrine of licensee

4

estoppel from challenging the validity of respondent's registered marks.

In her motion for summary judgment, petitioner argues that clear and convincing evidence shows that the term Realtor is generic to the relevant purchasing public. Petitioner points to a telephone brand awareness survey conducted by a professional consulting firm as well as what petitioner characterizes as "overwhelming" evidence of generic usage in books, magazines, newspapers, encyclopedia and in court decisions. According to petitioner, this evidence demonstrates that the primary significance of the term Realtor is a generic term for real estate agent.

More particularly, petitioner maintains that the term Realtor, coined in 1916 by a writer in National Real Estate Journal, has been generic since the 1920s, decades before respondent sought registration. Among other things, petitioner points to generic usage in the 1922 novel Babbitt by Sinclair Lewis, usages in numerous published federal court decisions including those of the U.S. Supreme Court, and usages from a randomly chosen newspaper from each of 24 states.

Petitioner's telephone survey was conducted over a two-week period in the summer of 1999 amongst individuals who had consulted a real estate agent in the past year or

were planning to do so in the coming year, or were planning to buy, sell or rent real estate in the next year. Ninety-six individuals were surveyed and only ten percent said that Realtor was a brand name.

In its responsive brief, respondent argues that its registered collective membership marks are not generic. Respondent contends that petitioner's evidence shows misuse of its registered marks through ignorance, carelessness or indifference, and that respondent's submission of copies of various printed publications shows proper use of its collective membership marks. Also, according to respondent's own telephone survey conducted amongst what it believes is the relevant "universe"--real estate brokers and agents who are purchasers or prospective purchasers of membership in respondent and the services provided by respondent--the primary significance of the term "Realtor" is that of a proprietary term indicating association with respondent and not a generic word. When asked whether "Realtor" refers to all real estate agents or only those who are members of respondent or one of its local or state associations, 84.3% of 204 individuals recognized this term as indicating members of respondent or one of its associations. Respondent also points to dictionary definitions, as well as newspapers and magazines which show

the proprietary nature of the term Realtor. Even if the relevant universe is defined to include not only real estate agents and brokers but also members of the general public who are in the market for real estate, respondent maintains that the term is not generic to the former group, and that this significance is more than sufficient to justify the continued existence of its registrations.

In addition to the foregoing arguments, respondent argues that its pleaded defense of licensee estoppel provides an independent basis on which this case should be dismissed. Respondent points to evidence of record that petitioner was a member of respondent or its affiliated associations from at least 1975 through 1996. During this period of time she paid dues to one of respondent's affiliated associations and was obligated to conduct her real estate business in accordance with certain by-laws, rules and regulations. Petitioner was licensed to use the Realtor mark in compliance with specified terms and conditions. She then terminated her association with respondent and created a competing real estate association.

Respondent is the nation's largest professional association with over 1500 member associations using the term Realtor to identify their affiliation with respondent.

Over 760,000 individual members use respondent's registered marks to identify their affiliation with respondent.

According to evidence submitted by respondent, petitioner paid membership dues and was a member of the San Diego Association of Realtors from around 1973 to 1996. Freeman dep., 15-16, 95, 99-100, 105. During part of this period of time she served on a committee of that local association of Realtors. Freeman dep., 27. That local association is a member of the California Association of Realtors, which is in turn a member of respondent.

Exhibit 31, a document found in petitioner's office and produced to respondent during discovery, is a copy of a certificate of membership and license to use respondent's collective membership marks. This document indicates that petitioner,

> Having undertaken a binding commitment to the strict Code of Ethics of the NATIONAL ASSOCIATION OF REALTORS® and having been duly qualified and admitted to active membership in a MEMBER BOARD of the NATIONAL ASSOCIATION OF REALTORS® and having satisfactorily met each and every other criteria established therefor…is hereby granted membership in the NATIONAL ASSOCIATION OF REALTORS® and accorded all the rights and privileges appertaining thereto, including, among others, the right by virtue of this license to use the term REALTOR® and the term REALTORS®, and the REALTOR® Logo, where appropriate as indicia of such membership…

8

> This license incorporates by reference all of the conditions, restrictions and limitations on usage of the aforementioned Collective Membership Marks as promulgated and from time-to-time amended by the Board of Directors of the NATIONAL ASSOCIATION OF REALTORS® and embodied in (1) the Constitution and Bylaws of the NATIONAL ASSOCIATION OF REALTORS®; (2) the policies and guidelines governing such usage; and, (3) the Bylaws of the MEMBER BOARD.
>
> The right to use the aforementioned Collective Membership Marks is expressly limited by this license to the jurisdiction of the MEMBER BOARD or Boards in which licensee holds active membership.

Exhibit 38 is a 1975 application by petitioner for Realtor-Associate membership and Exhibit 39 is a 1980 application for Realtor membership.

In her pleading and in her declaration in support of her motion for summary judgment, petitioner has admitted that she paid membership dues to the San Diego Association of Realtors and that she considered herself a member of that association until 1996. After terminating her membership in the San Diego Association of Realtors, petitioner formed the San Diego County Realty Association to compete with the former association. Freeman dep., 30.

As a member of the San Diego Association of Realtors, petitioner had the right to use respondent's programs and services as well as those of its member associations.

Respondent argues that petitioner, having been granted access to its many benefits and having been authorized to use the marks at issue during the 20-plus years covered by the membership licensing arrangement, now is barred as a former licensee from challenging the validity of the marks under which she was licensed. Attacking the validity of the very marks she was licensed to use is the type of conduct which the doctrine of licensee estoppel is intended to prevent, respondent argues. We agree.

Under the doctrine of licensee estoppel, a trademark licensee is estopped from challenging the validity of the licensor's mark under certain circumstances. *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F. Supp. 1246, 192 USPQ 121 (D.Mo. 1976), aff'd, 561 F.2d 1275, 195 USPQ 106 (8th Cir. 1977); *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F. Supp.2d 914, 54 USPQ2d 1012 (C.D.Ill. 2000); *STX, Inc. v. Bauer USA, Inc.*, 43 USPQ2d 1492 (N.D.Cal. 1997); and J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, § 18:63 (4th edition December 2001). A former licensee, however, may challenge the validity of the licensed mark on facts which arose after the license expired. *WCVB-TV v. Boston Athletic Association,* 926 F.2d 42, 17 USPQ2d 1688 (1st Cir. 1991); and *National Council of YMCA v. Columbia YMCA,* 8 USPQ2d 1682 (D.S.C. 1988).

Respondent places strong reliance on the case of *Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida, Inc.*, 200 USPQ 282 (S.D.Fla. 1978), where the local Bureau was estopped from attacking, on the basis of genericness, the validity of the licensed mark. In that case, plaintiff, a governing body of a collective association of licensed member Bureaus, sued a former local Bureau member for trademark infringement. The defendant became a local member in 1953 and remained a member Bureau for 25 years. During this period of time the defendant used and advertised its services under the Better Business Bureau mark and benefited from its affiliation with the plaintiff Council. Among the benefits of affiliation was permission to use the Council's federally registered mark. The defendant then terminated its affiliation with the Council. In holding that the defendant was estopped to contest the validity of the plaintiff's mark, the Court stated, at 288-89:

> Defendant is in the same position as the Defendant in Professional Golfers Assn. v. Bankers L & C Co., 514 F.2d 665, 186 USPQ 447 (5th Cir. 1975). In Professional Golfers, the Defendant, a former licensee, wished to continue using the licensed trademark after the termination of the license arrangement. One of the defenses relied on by the former licensee was to contest the validity of the trademark by alleging

11

(as does Defendant in the case at bar) that the trademark owner had abandoned the mark. The Fifth Circuit held that the Defendant, as a former trademark licensee, was estopped from challenging the validity of the licensed trademarks to the extent such challenge was based on facts arising prior to the termination of the license relationship. [Citation omitted.]

...The facts upon which Defendant relies for its challenge to the validity of the Better Business Mark all arose prior to the termination of Defendant's affiliation with Council. Hence, under the rule of Professional Golfers, Defendant is estopped from attacking the validity of the Mark on any ground...

...In view of these By-Laws and in view of Defendant having been associated for over 25 years with Council and having knowingly used the registered trademark of Council during that period of time, it is clear, that although not reduced to a written instrument, a license relationship existed between Council and Defendant under which Defendant was permitted to use the Better Business Bureau Mark only so long as it remained a member Bureau in good standing. The law has long recognized the existence and validity of an oral trademark license under such circumstances. [Citation omitted.]

Thus, under established Fifth Circuit law, Defendant, having used the Better Business Bureau name under license for twenty-five years, cannot now be heard to question the validity of this Mark on legal theories which rely for support, as do Defendant's in this case, on facts which arose prior to the termination of the license relationship.

As in the *Better Business Bureau* case, here the asserted facts on which petitioner bases her challenge of genericness arose prior to the termination of the license arrangement. It is clear that petitioner's case of genericness is based on her belief that respondent's collective membership marks were generic from the outset, and remained generic during her twenty-plus years as a dues-paying licensee. When she was a member of the San Diego Association of Realtors, petitioner acknowledged the validity of the licensed marks and benefited from the goodwill associated with those marks. Petitioner has not alleged or relied on facts regarding the significance of respondent's marks that have changed since 1996 when she ceased being a member of the San Diego Association of Realtors. That is to say, petitioner is not here claiming that these marks became generic after the termination of her license agreement. Rather, petitioner is relying on facts, including the meaning of the term Realtor, during the term of the license. Accordingly, we agree with respondent that petitioner's claims of genericness are barred under the doctrine of licensee estoppel. Because we conclude that petitioner's claims are barred, we need not decide the substantive issue of genericness of respondent's registered marks.

13

Canc. Nos. 27,885 and 28,047

Decision: The petitions for cancellation are dismissed.